[No. 21143. *En Banc.* December 13, 1928.]

DELBERT R. McFADDEN, *Appellant,* v. ALLEN-NELSON MILL COMPANY *(now Bratnober Company), Respondent.*[1]

[1] Reported in 272 Pac. 714.

250

*Elias A. Wright* and *Sam A. Wright,* for appellant.
*Edwin H. Flick (H. Gordon Chute,* of counsel), for respondent.

HOLCOMB, J.—This action was originally instituted against Allen-Nelson Mill Co., a corporation, which answered under the name of Bratnober Company, a corporation, to which name the former corporation had been changed. The action is to quiet title to a tract of forty acres of land in King county, Washington, and the standing timber thereon.

On July 24, 1906, Julius Rubow, the then owner of the land, made a contract with Allen-Nelson Mill Company, designated a "timber contract," conveying to the mill company the timber and the right to take it off within a period of five years, "without let or hindrance."

A further provision of the contract was as follows:

"If for any reason the above timber is not removed within five years above mentioned, then the party of the first part grants unto the party of the second part such longer period as may be needed for the removal of the timber by the payment to said first party of the sum of ten dollars per year, for each and every year after the five years above mentioned. First party also grants to said second party the right to construct and operate a logging rail road across above described lands, for the purpose of removing this and other timber for a period of five years from this date. Said first party also grants to said second party such longer time as may be desired by said second party upon the payment of five dollars for each and every year after the five years above mentioned, until said road may be taken up by the second party. . . ."

This contract was duly acknowledged, and was recorded in the office of the auditor of King county on April 7, 1909.

The abstract of title shows that Rubow, the grantor, died June 15, 1913, leaving as his only heirs his father and mother. They conveyed the property to their son Fred W. Rubow, of Donnybrook, North Dakota, July 8, 1913. That son conveyed to one Moore, Feb. 15, 1918, who mortgaged the premises to his grantor. The mortgage was assigned to one Gerding, January 20, 1919, who foreclosed the mortgage which resulted in a sheriff's certificate to Gerding, December 6, 1919. Gerding assigned the certificate of sale to appellant, July 17, 1920. Moore and wife, the mortgagors, quitclaimed to appellant, August 16, 1920. A sheriff's deed was executed and delivered to appellant, December 7, 1920, and filed for record, December 23, 1920, in the office of the auditor of King county.

After a trial to the court, and the submission of proposed findings of fact, conclusions of law and decree by both parties, the court refused the proposed findings of both parties, but made findings and conclusions upon which it entered a decree, which, among other things, dismisses the action with prejudice, but does grant relief to respondent to the extent of granting until January 1, 1931, to complete its logging railroad upon its operations in the neighborhood of Jacob's lake in King county northward towards plaintiff's land, and log the same off within that time. Neither party was awarded costs below.

Among other things the court found, with ample evidence to support it, that the time which had elapsed was not a reasonable time for respondent to have taken the timber from appellant's land; that, under the contract respondent does not have an unlimited time within which to comply with its agreement, and that

more than a reasonable time had elapsed for it to have removed the timber.

The court found that respondent duly conformed to and carried out the provisions of the contract regarding the payment of ten dollars per year, as provided in the second paragraph thereof, together with taxes, and that having no notice of the purchase of the land, it continued to pay Julius Rubow and his immediate heirs-at-law the sum of ten dollars per year, as provided in the contract, up to and including the year 1925; that on February 27, 1926, notice was for the first time given to respondent that, because of unreasonable delay in performance, this appellant claimed a forfeiture of the land; that thereupon tender was made of the amount due in 1926, under the contract, to attorneys then representing appellant; that upon the appearance of the present attorneys for appellant, tender was then made to them of the amount theretofore paid to Rubow, since the time of purchase by appellant of the land as described, which was rejected, for and on behalf of appellant, upon which, on November 1, 1926, this· action was begun.

It was further found that, at the time the contract was made, respondent was operating in a certain section, town and range, which was southwest of Jacob's lake, by means of several donkey engines, but without the use of railroads; that sometime in 1907, respondent ceased operations in that area and began logging on the west side of Lake Sammamish, continuing operations there until 1916, at which time it built a logging road from Lake Sammamish to a certain section, town and range, and thereafter proceeded to log in and about that area, and continued its logging railroad in a northeasterly direction across two certain sections and thence again northeast into a certain section, town and range.

The court found that, during the year 1921, while the logging operations were being carried on in the westerly part of section twelve, which was about three miles to the south and east of the land owned by appellant, appellant worked for respondent while it was operating by railroad in that vicinity; that thereafter respondent continued its logging operations and extended its railroad in a northerly direction further east along a lake known as Beaver lake, logging the timber in a certain section one, immediately north of section twelve before mentioned, and thereafter respondent purchased school section thirty-six in the adjoining township, immediately north of section one, last mentioned, and logged that land. (The maps in the record show that this last mentioned section, thirty-six, is immediately east of section thirty-five in which appellant's land is situated, being the northeast quarter of the northwest quarter of that section.)

The court also found that, after respondent had begun its road and logging operations northeast from Beaver lake, which was about two miles southeast from appellant's land, appellant during the year 1922 lived there on his land and knew of the logging operations; that the father of appellant also lived there and near enough to hear the engines engaged in the logging operations.

The court thereupon found as a fact that appellant was estopped, by his conduct and his acquiescence in the course taken by respondent in the logging of the timber, from asserting that it should have, six years ago, taken the course northwest from Jacob's lake to the timber in question, in that by standing by, observing such progress easterly from Beaver lake, working for respondent at that time and failing to give notice to respondent that it ought to turn north from Beaver

lake in its operation, he thereby gave warrant to respondent to continue easterly up Beaver lake.

The court then found that respondent could, by beginning operations at Jacob's lake at the date of the hearing of the action, in June 1927, by extending its railroad northward towards appellant's land, reach and log the same in its northward progress in about three and one-half years.

Appellant groups his arguments under four headings as follows:

(1) What is "a reasonable time," under a proper construction of the contract and within the contemplation of the parties thereto, within which respondent was bound to exercise its rights?

(2) Was appellant bound to notify respondent that the reasonable time under the contract had expired before claiming a forfeiture?

(3) Had appellant in anywise misled respondent and lulled it into suspense, so that appellant would be estopped?

(4) Did the court have the right to extend the time, or in other words, make the contract over, for the parties?

As a proper premise to approach the discussion of the questions involved, it should be noted that this contract is not a logging contract, as many of the cases cited by respondent involve, nor is it a contract where the grantor sold his land, reserving the timber, as in *Hendrickson v. Lyons,* 121 Wash. 632, 209 Pac. 1095. Nor is it a contract containing any such perpetual rights to remove the timber as were involved in some of the cases cited by respondent, such as *Skamania Boom Co. v. Youmans,* 64 Wash. 94, 116 Pac. 645, which was a contract for a sale of the land, reserving the timber, and granting a right of way, for

the purpose of removing the timber and the construction of a logging railroad, ''forever''.

It must be granted, that this contract, while a contract for the sale of the timber and its removal within five years, and granting a right of way for that purpose, is complicated somewhat by the provisions also granting further rights to the grantee for ''such longer period as may be needed for the removal of the timber by the payment to said first party of the sum of ten dollars per year''; and the further right, for such longer time as may be desired by the grantee, upon the payment of five dollars for each and every year after the five years specified in the contract for the removal of any road constructed by the vendee, until such road may be taken up by it.

As to the provisions concerning the grant of the right of way for a logging railroad in the contract, respondent contends that the contract contemplated, and the parties intended, that the timber should be removed by a logging railroad, and that consequently such timber would not be intended by the parties to be removed until the grantee, in the course of its ordinary operation by logging railroad, should log off the land in its ordinary course of operations as such logging is done by logging railroad, no matter what length of time it required.

We cannot see that those provisions of the contract necessitate such construction. At the time the contract was entered into, respondent was operating with donkey engines, and so far as the grantor may have known would so operate indefinitely. The contract merely gave respondent the right or option to construct and operate a logging railroad upon the land in question, with the necessary right of way therefor, upon the payment of a very insignificant rental per year.

The courts generally hold and we have decided that:

"Unless, the deed clearly manifests an intention on the part of the grantor to convey a perpetual right to enter upon the land and remove the timber, the purchaser will be allowed only a reasonable time for such removal, and what is a reasonable time is a question of fact dependent upon the circumstances of each case." [Citing authorities] *Morgan v. Veness Lumber Co.*, 108 Wash. 674, 185 Pac. 607.

In the above cited case no specific time was set within which the timber should be removed from the land, the contract being entered into on August 17, 1906, and on February 18, 1918, none of the timber having been removed, the grantor began his action to quiet title and forfeit all rights of the assignee of the original grantee in and to the timber and land. In passing upon the case, sustaining the finding of the trial court that more than a reasonable time had elapsed for the performance of the contract by the vendee and his assignee, we quoted approvingly from 8 R. C. L. 1051 as follows:

"A deed is construed most strongly against the grantor and in favor of the grantee. . . . If, therefore, the deed can inure in different ways, the grantee, it is said, may take it in such way as will be most to his advantage. But it has been held that the rule of favor is the last one which courts apply, and ought never to be resorted to so long as a satisfactory result can be reached by other rules of analysis and construction, . . ."

(p. 1038) "In applying the rule of intention, the courts will so construe a conveyance as to give effect to the intention of the parties rather than defeat such intention by a strict technical construction of the form of conveyance adopted or of the words used therein, the estate intended to be conveyed being the main thing, and the conveyance only the instrument by which the transfer is effected; and where the intention of the grantor clearly appears from the face of a deed, effect must be given thereto, however unusual the form

of the deed, unless the repugnance in its clauses is such as to render the deed utterly void.''

Applying the rule that a deed is to be construed most strongly against the grantor in favor of the grantee, and that no rule of favor toward the grantor ought ever to be accorded him, a satisfactory result can be reached by other rules of analysis and construction of the contract under consideration.

Here we find a contract, which, to begin with, granted to respondent the right to take the timber off of a forty-acre tract of land within five years. The tract was small and the record shows that the stand of timber was comparatively light, there being about one million feet of second and third grade timber upon the tract, and that respondent was then engaged in logging operations with donkey engines in an area about three miles from the land.

Evidently, at the time the contract was entered into, the grantee who made it considered that five years would be a reasonable time within which to perform the contract. It therefore secured a contract to that effect from its grantor. It also at the same time secured a right of way for a logging railroad, if it afterwards decided to operate by logging railroad, upon the land in question for a very nominal rental per year. It then provided that it should have such longer period as might be needed for the removal of the timber by the payment to its grantor of the slight sum of ten dollars a year.

On the other hand, the grantor, in contracting for the sale of the timber, had granted an interest in his land for five years and so much longer *as might be needed* for the removal of the timber and a right of way for a logging railroad. After the expiration of the five years, the grantor would be excluded from the

use of his lands for such reasonable time as his grantee *should need* for the removal of the timber.

The evidence shows that the land is somewhat valuable for agricultural purposes when the timber is removed, and that appellant desires to use it for such purposes; and it may be reasonably presumed that the grant was originally made with that intention in view, for it is not to be presumed otherwise, unless, as was said in the *Morgan* case, *supra,*

". . . the deed clearly manifested an intention on the part of the grantor to convey a perpetual right to enter upon the land and remove the timber."

Such was not the grant.

We thoroughly agree with the statement and finding of the trial court that much more than a reasonable time had elapsed for the performance of the contract by respondent.

See *Bunch v. Elizabeth City Lumber Co.,* 134 N. C. 116, 46 S. E. 24, where the court held that, where the contract was to remove timber within five years from the time the grantee began to manufacture the timber into wood or lumber, it was bound to commence within a reasonable time, and that "thirteen years was unreasonable". Here there were twenty years.

See, also, *McNair & Wade Land Co. v. Adams,* 54 Fla. 550, 45 South. 492; *Quigley Furniture Co. v. Rhea,* 114 Va. 271, 76 S. E. 330; *McClary v. Atlantic Coast Lumber Corporation,* 90 S. C. 153, 72 S. E. 145.

We conclude, therefore, that under the terms of the contract, as a whole, only a qualified or determinable interest was granted (*McClary v. Atlantic Coast Lumber Corporation, supra*), and that, since much more than a reasonable time elapsed without anything being done to perform the contract, the contract was terminated and forfeitable at the option of the grantor, provided he and his predecessors in interest were not estopped.

■ The trial court, as will be noted by the findings, considered that appellant's predecessor was estopped by his acceptance of the ten dollars per year provided in the contract, and that his immediate heirs at law were also so estopped up to and including the year 1925.

But their title had passed by operation of law and by mesne conveyances prior to 1925. Appellant acquired title and caused it to be recorded in the proper recording office in December, 1920, after which time all parties would be bound by constructive notice thereof.

While it is true the heirs and the grantee of the heirs of Rubow received the ten dollars per year payable under the contract until 1925 as found by the court, there is no evidence whatever that appellant knew of such payments by respondent to the Rubows, and it cannot be said that he is bound and estopped by the moneys paid by respondent and received by the Rubows, without his knowledge, or consent. Since this title was of record from and after December, 1920, of which respondent had constructive notice, respondent paid the Rubows at its own peril. No estoppel can result against appellant by reason thereof.

■ Nor can we concur with the finding of the trial court that appellant is estopped by his conduct in acquiescing in the course taken by respondent in logging the timber on its other lands from a time six years before the commencement of this action when it was in the neighborhood of Jacob's lake, in progressing in a direction therefrom northeastward and diverting from a course of operations directly toward the land of appellant.

Estoppel does not ensue from mere silence or acquiescence, where there was no duty on the part of the party sought to be estopped to act or speak, and

the opposite party was not led into an injurious situation or condition by such conduct. As has been said, this is not a logging contract. Appellant had no interest in or concern with the operations of respondent. Subject to his rights under his contract, they could proceed in any direction they saw fit and log any of their lands that they pleased.

As was said by the supreme court of South Carolina, in *Minshew v. Atlantic Coast Lumber Corporation,* 98 S. C. 8, 81 S. E. 1027,

"We do not think it was necessary for the vendor to give any notice to the defendant to commence to remove the timber; the defendant knew what the contract was, and it is to be presumed knew what its rights under it were and enforced or abandoned its rights as it saw fit."

In that case it was also observed that:

"Under contracts of this character, the purchaser has only the right to have a reasonable time to get the fruits of his purchase. He has no right to enjoy, by indefinite extension, what would practically amount to a perpetuity and deprive the owner of the enjoyment of his property."

In *Frazee v. Frazee,* 79 Md. 27, 28 Atl. 1105, it was held that it was well established that, where a party's rights in property sufficiently appear of record, mere silence upon his part was no violation of duty and he was not estopped to assert his rights.

This court, in a case where the elements of estoppel were much more pronounced than here, *Peterson v. Bergman Cabinet Mfg. Co.,* 145 Wash. 664, 261 Pac. 381, held that a creditor having liens on property of an assignor for the benefit of the creditors was not estopped from asserting the liens against the purchaser of the property at an assignor's sale, announced as free from all incumbrance, by his silence at the time of the announcement, where the purchaser had con-

structive notice of the liens by reason of their due filing for record at the time of sale; and that in such a case there would be no estoppel from the circumstance that the lien claimants worked for the assignee of the insolvent, knew of and discussed the impending sale, and consulted with reference to bidding at the sale.

In the case at bar, respondent had constructive notice of the rights of appellant in the premises. Appellant did no more than remain silent when respondent was conducting logging operations not directly progressing toward the land of appellant. Appellant also worked on the logging railroad of respondent for a short time during the summer of 1921, but obviously appellant had no control whatever over the direction in which the logging railroad should be built, or any knowledge whatever of the intention of respondent in progressing with it—whether it would be in the direction of his timber during that year or the next or some other year in the near future. Respondent was logging its timber as it saw fit, presumably in the manner most profitable to it. The silence of appellant caused no loss or detriment to respondent.

"It is fundamental that a party relying upon an estoppel must show that he has been prejudiced by the act of the party whom he is seeking to estop. Estoppels operate only towards parties or privies, and the party who pleads an estoppel must be one who has in good faith been led to his injury." *Butler v. Supreme Court of Foresters,* 53 Wash. 118, 101 Pac. 481.

"There was here no misleading nor injury. Neither party changed his course of dealing because of the nature of the claims." *Raynor v. Scandinavian American Bank,* 122 Wash. 150, 210 Pac. 499.

In the *Peterson* case, *supra,* we recognized the general rule as stated in 21 C. J. 1216, to the effect that, where a person with actual or constructive knowledge

of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. After quoting from other cases, we also quoted from *Crary v. Dye,* 208 U. S. 515, as follows:

"The principle of estoppel is well settled. It precludes a person from denying what he has said or the implication from his silence or conduct upon which another has acted. There must, however, be some intended deception in the conduct or declarations, or such gross negligence as to amount to constructive fraud. [citing cases.] And in respect to the title of real property the party claiming to have been influenced by the conduct or declarations must have not only been destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

In the present case there was not the slightest implication in the facts shown of record that there was intended deception in the conduct, or declarations, or silence of appellant, which would amount to gross negligence or constructive fraud. Respondent certainly had the same knowledge of the conditions of its contract that appellant had.

We are not impressed with the argument and attempted showing of respondent as to customary and economical logging operations; as to what it contends would have been excessive and prohibitive changes and expense, in attempting to log this land off sooner, by building six miles of railroad grade from its recent operations, or by logging it by means of trucks; and the contention that unless warranted by the strict

needs of the case, such excessive and prohibitive changes, where not contemplated by law, will not be permitted by a court of equity under such circumstances, where a party seeks forfeiture of all rights under the contract; for as we have pointed out, this is not a logging contract, but a sale of timber and an easement. Respondent made its own contract, and limited its own time with the possibility of additional reasonable time thereafter under the terms of the contract.

■ We consider, however, that appellant himself was not justified, in equity, in standing by and knowingly permitting respondent to pay taxes, under the contract, in substantial sums annually, from the time appellant acquired the title until February 27, 1926, and then summarily forfeiting the contract, without giving respondent a reasonable time to remove the timber. Three and one-half years time from the time of trial was much more than a reasonable time. Under all the circumstances and conditions shown herein, we find that respondent should, in equity, now be granted until January 1, 1930, an extremely ample time, in which to remove the timber, failing in which, the contract should be forfeited and the title of appellant to the land and timber quieted.

The cause is remanded with instructions to modify the decree in conformity herewith.

Appellant, having recovered a more favorable judgment, will recover his costs of appeal.

FULLERTON, C. J., TOLMAN, BEALS, and MITCHELL, JJ., concur.

PARKER, FRENCH, and MAIN, JJ., concur in the result.