[No. 19918-1-II. Divison Two. May 16, 1997.]

THE STATE OF WASHINGTON, *on the Relation of Mary Ruth Campbell, Respondent*, v. DAVID COOK, *Appellant.*

---

*Mark F. Baum* and *Baum, Etengoff & Buckley*, for appellant.

*Christine O. Gregoire, Attorney General,* and *John P. Wulle, Assistant*, for respondent.

HUNT, J. — David Cook appeals the trial court's denial of his motion to reopen a 16-year-old judgment declaring him to be the father of D.J.C., who is now approximately 18 years old.[1] Cook contends that: (1) the trial court lacked jurisdiction to enter the original adjudication of paternity in 1981 because the court did not appoint a guardian ad litem (GAL) to represent D.J.C. when the case was originally filed; (2) the trial court erred in denying his CR 60 motions as untimely; and (3) the trial court erred in failing to conduct a hearing to determine if his motion to disestablish paternity was in "the best interests of the child." We affirm.

## FACTS[2]

On July 12, 1978, Mary R. Campbell gave birth to a son,

---

[1]Cook filed his motions when D.J.C. was 15 years old.

[2]The facts in this case are difficult to surmise due to administrative record cleansing, which left many gaps in the reporting and records. This statement of facts represents the best estimation of the relevant facts as compiled from the record.

D.J.C. On September 28, 1978, Campbell and the State of Washington filed a petition to establish paternity, alleging that Cook was D.J.C.'s biological father. On January 26, 1979, an order requiring blood testing was filed with the trial court. The blood test revealed an 80.73 percent probability that Cook was D.J.C.'s father.

On September 25, 1979, an order of default was entered, declaring Cook to be D.J.C.'s biological father. On June 20, 1980, Cook filed a motion for relief from judgment. While there is no official record of this motion, the trial court eventually set aside the default judgment and set the matter over for a full trial on all issues.

On May 27, 1981, the trial court entered its findings of fact and conclusions of law. The trial court found that Cook and Campbell had engaged in sexual intercourse from 1975 to 1978, specifically in the months of October and November of 1977, roughly nine months prior to D.J.C.'s birth. The trial court also found that Campbell did not engage in sexual intercourse with any other individual during the months of October and November of 1977. The trial court found that Cook was D.J.C.'s biological father and entered an order of support and adjudication of paternity. Cook did not appeal the order.

In 1985, the State requested the State of Oregon to pursue a collection action against Cook, an Oregon resident, under the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA). Cook sought to defeat the collection action by producing an affidavit from Campbell in which she recanted her claim that Cook was D.J.C.'s father.[3] In the affidavit, Campbell stated that: (1) she had named Cook as D.J.C.'s father because she wanted Cook to marry her; (2) she had named Cook as D.J.C.'s father because she wanted to be eligible for welfare benefits; and (3) she had engaged in sexual relations with other men in October of 1977.

---

[3]Cook eventually failed to appear before the court in Oregon to defend against the URESA claim, and the court entered an order for child support of $200 per month.

On June 7, 1994, nine years after production of Campbell's affidavit, Cook moved for an order for relief from judgment under CR 60, seeking to disestablish his paternity of D.J.C. Cook asked the trial court to conduct a show cause hearing to determine whether he should be relieved from the original paternity order or, in the alternative, to grant a new trial.

Because D.J.C. was 15 at the time Cook's motion was filed, a GAL was appointed to represent his interests. The trial court ordered the GAL to investigate the situation and to recommend whether it was in the "best interests of the child" to reopen the paternity action. During the investigation, Campbell told the GAL that she had signed the aforementioned affidavit denying Cook's paternity only because Cook had coerced her into doing so with promises of marriage. Campbell told the GAL that Cook was the only possible father of the child.

In her report filed on September 16, 1994, the GAL strongly recommended that the trial court: (1) deny Cook's request for additional blood testing; (2) reaffirm the determination of Cook as D.J.C.'s biological father; and (3) deny Cook's requests to depose Campbell and D.J.C. The GAL stated that reopening the paternity action produced risks to D.J.C. that far outweighed the potential benefits for Cook.

The trial court held that under CR 60, Cook had failed to bring the action to vacate the adjudication of paternity within a reasonable time after having gained knowledge of facts that may have supported his assertion that he was not D.J.C.'s father. The trial court also held that allowing Cook to bring an action to disestablish his paternity was not in D.J.C.'s best interests. Thus, the trial court dismissed with prejudice Cook's motion to disestablish paternity. Cook timely appealed.

## ANALYSIS
### I. Reasonable Time under CR 60.

Cook brought his motion to vacate the adjudication of

paternity under CR 60(b). A CR 60 motion for relief from judgment must be made within a "reasonable time." CR 60(b); *Balmer v. Norton*, 82 Wn. App. 116, 121 n.1, 915 P.2d 544 (1996). The trial court held that Cook failed to bring the action within a reasonable period of time after having gained knowledge of facts that would lead him to believe that he was not D.J.C.'s father.

The trial court's disposition of a motion to vacate under CR 60 will not be disturbed on appeal unless the trial court clearly abused its discretion. *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990); *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). Abuse of discretion means that the trial court exercised its discretion on untenable grounds or for untenable reasons, or that the discretionary act was manifestly unreasonable. *Lindgren*, 58 Wn. App. at 595 (citing *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990)).

A determination of what constitutes a "reasonable time" depends on the facts and circumstances of each case.[4] *Miller v. Sybouts*, 97 Wn.2d 445, 449, 645 P.2d 1082 (1982) (citing *McFadden v. Allen-Nelson Mill Co.*, 150 Wash. 249, 256-58, 272 P. 714 (1928)). Here, Cook was legally adjudicated to be D.J.C.'s father in 1981. In 1985, Cook sought to defend himself against the URESA action, at which time Cook possessed the affidavit from Campbell questioning whether Cook was D.J.C.'s biological father. Cook then waited until 1994 to seek vacation of the 1981 paternity order, based on that same 1985 affidavit from Campbell. We agree with the trial court that nine years is not a reasonable time within which to have brought a CR 60 motion.

At the time Cook was determined to be D.J.C.'s father,

---

[4]Several federal courts have held that under CR 60(b), a "reasonable time" is that time not exceeding the time for appeal of the judgment. *See Bjurstrom v. Campbell*, 27 Wn. App. 449, 454 n.8, 618 P.2d 533 (1980) (citing *Gila River Ranch, Inc. v. United States*, 368 F.2d 354 (9th Cir. 1966); *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969)).

the boy was three years old. At the time Cook first possessed the affidavit questioning Cook's paternity, D.J.C. was six years old. At the time Cook moved to vacate the 1981 paternity order, D.J.C. was 15 years old. In her report, the GAL concluded that vacating the original paternity order would eliminate what little identity D.J.C. already possesses, and that the risk to D.J.C. outweighed any potential benefits for Cook. We find that the trial court did not abuse its discretion in dismissing Cook's CR 60 motion due to his failure to file his claim within a reasonable time.[5]

II. Appointment of a GAL/Trial Court Jurisdiction.

Void judgments may be vacated under CR 60 regardless of lapse of time. *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323-24, 877 P.2d 724 (1994); *In re Marriage of Leslie*, 112 Wn.2d 612, 618-19, 772 P.2d 1013 (1989). Cook claims that the trial court did not possess jurisdiction to enter the paternity order in 1981 because it did not appoint a GAL for D.J.C. when the State originally filed the case in 1978. He therefore contends that the adjudication of paternity was void.

The Uniform Parentage Act, in effect at the time the 1978 paternity action was filed, provided in pertinent part:

> The child shall be made a party to the action. If he is a minor, he shall be represented by his general guardian or a guardian ad litem appointed by the court. The child's mother or father may not represent the child as guardian or otherwise.

Former RCW 26.26.090(1), LAWS OF 1975-76, 2d Ex. Sess. ch. 42 § 10. A new statute covering "actions to determine parent and child relationship" in effect at the time of the 1979 default and the 1981 adjudication of paternity,

---

[5]In his brief, Cook argues the merits of his claims under CR 60(b)(4) and CR 60(b)(11). The substantive merit of Cook's claims were not decided by the trial court. The trial court concluded only that Cook did not file his claim within a reasonable time, and that reopening the adjudication of paternity was not in D.J.C.'s best interests.

however, discontinued the required appointment of a guardian ad litem in the following instances:

> The provisions of RCW 26.26.090 requiring appointment of a general guardian or guardian ad litem to represent the child in an action brought to determine the parent and child relationship do not apply to actions brought under chapter 26.26 RCW if:
>
> (1) The action is brought by the attorney general on behalf of the department of social and health services, the child, or the natural mother; or
>
> (2) The action is brought by any prosecuting attorney on behalf of the state, the child, or the natural mother when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.
>
> The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary.

Former RCW 74.20.310, LAWS OF 1979, 1st Ex. Sess. ch. 171 § 15.[6]

The State filed the initial paternity action in this case on September 28, 1978. But, RCW 74.20.310 was not amended to delete the GAL requirement until September 1, 1979. Cook claims that the trial court erred in not appointing a GAL for D.J.C. when the paternity action was originally filed.

■■ First and foremost, we simply do not know whether a GAL was appointed for D.J.C. when the paternity action was originally filed in 1978. Cook's conclusory claims that a GAL was never appointed are not supported by the current record. Under RAP 9.10, the

---

[6]The 1991 amendments to this act retained the above language of the 1979 version and added, inter alia, the following:

> On the issue of parentage, the attorney general or prosecuting attorney functions as the child's guardian ad litem provided the interests of the state and the child are not in conflict.

Former RCW 74.20.310(2), LAWS OF 1991, ch. 367 § 45.

court is not required to order supplementation of an incomplete record, and the court need not consider an alleged error if a complete record is not provided. *City of Seattle v. Torkar*, 25 Wn. App. 476, 477-78, 610 P.2d 379 (1980). Moreover, the lack of a complete record is a result of Cook's delay of many years in bringing this action, during which time many of the original records were destroyed. Cook therefore cannot support his claim that the trial court failed to appoint a GAL in 1978.

Even assuming (without deciding) that the 1979 default and order of paternity were void for want of a GAL, the issue is moot. The trial court set aside the 1979 default judgment and order of paternity, then conducted a full trial and entered a new adjudication of paternity in 1981.[7] At the time of the 1981 trial, RCW 74.20.310 had been enacted. Under the new statute, a GAL was not required when an action was brought by the State or prosecuting attorney on behalf of Department of Social and Health Services, the child, or the natural mother; appointment of a GAL was left to the trial court's discretion. Because no GAL was required at the 1981 paternity adjudication, we presume that the 1981 paternity determination and the judgment of the trial court are valid. RAP 7.2(c); *State v. ANW Seed Corp.*, 116 Wn.2d 39, 44, 802 P.2d 1353 (1991); *Haller v. Wallis*, 89 Wn.2d 539, 549, 573 P.2d 1302 (1978).

### III. Best Interests of the Child.

Cook cryptically argues that in the present case, D.J.C.'s best interests would be served by allowing this paternity action to go forward so that his "real" father could be accurately identified. The State argues that Cook should not be allowed to assert D.J.C.'s best interests in his attempt to nullify the long-standing paternity determination.

In actions relating to the care and welfare of minor

---

[7]Because the case was originally decided by default judgment, there was no occasion for a GAL to take an active part in the proceedings between 1978 and 1981. *Hayward v. Hansen*, 97 Wn.2d 614, 619, 647 P.2d 1030 (1982).

children, the "best interests of the child" control. *Mc-Daniels v. Carlson*, 108 Wn.2d 299, 309-10, 738 P.2d 254 (1987). A paternity suit, by its very nature, threatens the stability of a child's world. The courts recognize, just as the GAL recognized here, that a new paternity determination is not automatically in the child's best interests, especially where, as here, considerable time has passed since the adjudication of paternity. Absent a showing that a paternity determination is within the child's best interests, someone who is not acting on the child's behalf cannot invoke this standard. *McDaniels*, 108 Wn.2d at 310.

Cook contends that the "best interests of the child" have not been protected because Campbell lied at the original 1981 paternity determination. Cook argues that the trial court should have conducted a full hearing to determine what would be in D.J.C.'s best interests. Cook further argues that the trial court should have balanced the interests of all parties involved, because he has a strong interest in not being required to pay child support.

Cook's arguments are unpersuasive. Although it is true that a paternity determination involves rights of the parent, the child, and the state, when these rights come into conflict, the rights of the child should prevail. *Mc-Daniels*, 108 Wn.2d at 311. Despite Cook's claimed burdens of being named as D.J.C.'s father, it is always the child who has the most at stake in a paternity proceeding. *Mc-Daniels*, 108 Wn.2d at 311; *State v. Santos*, 104 Wn.2d 142, 143, 702 P.2d 1179 (1985).

In the present case, the trial court properly focused on and determined what would be in the "best interests of the child." Upon Cook's request to set aside the original paternity determination, the trial court appointed a GAL to prepare a report outlining what actions would best serve D.J.C.'s interests. The GAL concluded that:

> [T]here is absolutely no benefit to [D.J.C.] in pursuing additional blood testing. Should testing results today differ from those results obtained in 1979, [D.J.C.] would lose what little identity he had today in terms of his parental heritage. That

risk to [D.J.C.] far outweighs any potential benefit such tests might provide to David Cook.

I, therefore, strongly recommend that the court deny Mr. Cook's request for additional blood testing and that the court reaffirm that David Cook is the biological father of [D.J.C.], thereby preserving [D.J.C.]'s legal claim to any rights with respect to his biological father.

Cook contends that the "best interests of the child" is a judicial determination that should have been made by someone other than the GAL, arguing that the GAL report did not provide an adequate basis for the trial court's denial of Cook's motion to reopen the paternity determination. Cook also asserts that the GAL was not qualified to make psychological determinations concerning D.J.C.'s well-being.

 The record shows that the GAL was qualified to make a determination as to D.J.C.'s best interests. Moreover, it was not the GAL who made the final decision as to the child's best interest and who denied Cook's request to reopen the paternity adjudication. The trial court examined the GAL report and the particular facts of the case, then balanced the interests of all parties involved, while ensuring that D.J.C.'s best interests were paramount. *McDaniels*, 108 Wn.2d at 313. The trial court concluded that allowing Cook to reopen the paternity adjudication would not be in the "best interests of the child."

We find that the trial court did not abuse its discretion in denying Cook's CR 60(b) motion. We therefore affirm.

HOUGHTON, C.J., and SEINFELD, J., concur.

Review denied at 133 Wn.2d 1019 (1997).