1 P.3d 587 (2000)
100 Wash.App. 885
Dennis DeYOUNG and Marilyn DeYoung, husband and wife, Appellants,
v.
CENEX LTD. d/b/a Full Circle Part and d/b/a Full Circle Marketing Dept., a Minnesota corporation, and Larry Schaapman and Jane Doe Schaapman, husband and wife, Respondents.
No. 18404-8-III.
Court of Appeals of Washington, Division 3, Panel Three.
March 25, 2000.
*589 C.E. "Monty" Hormel, Ephrata, for Appellants.
Michael R. Tabler, Schultheis & Tabler, Ephrata, for Respondents.
*588 BROWN, A.C.J.
This is the second appeal by Dennis and Marilyn DeYoung arising from damage claims against Cenex, Ltd. and Larry and "Jane Doe" Schaapman over the use of off-label chemicals on the DeYoungs' farm in Grant County in 1990. In an unpublished opinion, we affirmed the summary judgment dismissal of various claims and reversed solely *590 on issues of negligence and waste. After remand, the trial court granted the DeYoungs' summary judgment for nuisance liability. The jury rejected waste liability, but found Cenex negligent. Even so, the jury rejected proximate cause for damage for both negligence and nuisance.
We affirm after discussing: (1) dismissal of a statutory hazardous waste claim, (2) denial of a CR 60(b) motion, (3) a juror misconduct claim, (4) denial of venue change, (5) exclusion of an expert's discovery deposition, (6) exclusion of portions of a testifying expert witness' cumulative report, and (7) an irrelevant damage instruction.

FACTS
In March 1990, Mr. DeYoung leased his 100 acre irrigated circle to Mr. Schaapman for the 1990 growing season in exchange for $12,500. Concurrently, Mr. Schaapman entered into a side-agreement splitting profit with Cenex and reimbursing Mr. Schaapman for all farming expenses related to the circle. Cenex was to dispose of its rinsate pond as an off-label or out-of-label source for chemical applications on the circle. The rinsate pond chemicals consisted of the rinsed residue of various fertilizers and pesticides sold by Cenex. The rinsate theoretically caused crop damage and to some degree soil contamination in 1990. Cenex then leased the circle from Mr. DeYoung for the 1991 crop year in exchange for bringing current the DeYoungs' underlying mortgage debt, approximately $46,000, with Travelers Insurance Company. Mr. DeYoung additionally was required to execute a $130,000 note secured by a second mortgage that represented the DeYoungs' debt with Cenex. The 1991 crop was again theoretically harmed due to the chemical contamination.
In 1992, Mr. DeYoung decided he was unable to farm, sell, or lease his farm due to Cenex's chemical applications. He failed to pay Travelers; it foreclosed. Cenex redeemed the property; the DeYoungs did not. Instead, the DeYoungs sued both Cenex and the Schaapmans, alleging various theories including improper use and disposal of pesticides. Cenex counterclaimed on the promissory note. A first appeal resulted from successful summary judgments in favor of the respondents dismissing all of DeYoungs' claims and granting judgment to Cenex on the DeYoung note. In an unpublished opinion, we reversed for trial solely on the issues of negligence and waste. DeYoung v. Cenex, No. 14802-5-III, 81 Wash.App. 1031, (May 2, 1996). We affirmed the trial court's judgment in favor of Cenex on the note.
After remand, the DeYoungs amended their complaint to include private nuisance and violation of Washington State's Hazardous Waste Management Act, RCW 70.105. The DeYoungs received summary judgment on nuisance liability with damage issues reserved for trial. Cenex received summary judgment on the hazardous waste claim under theories of res judicata and collateral estoppel. The trial court for similar reasons denied the DeYoungs' CR 60(b) request for relief from judgment on the note.
At trial, the DeYoungs intended to call Harper Grimes as an expert. Mr. Grimes informed the DeYoungs about 10 days before trial that he might not be able to testify because of a family emergency. The defense was not informed in a timely way. On the second day of trial, the DeYoungs informed the court of their problem and unsuccessfully asked that the Grimes discovery deposition be published. The court cited late notice and a failure to establish Mr. Grimes' expertise in the deposition as reasons for denying publication. The trial court indicated it would allow the DeYoungs to reopen if Mr. Grimes became available.
Calvin Briggs, a retired supervisor in the Washington Department of Agriculture, testified for the DeYoungs. The DeYoungs sought to introduce his entire investigative report as a business or public record. The trial court excluded all but two pages, reasoning the witness could and did testify to the rest.
Neither party introduced evidence regarding the cost of restoring the property to its condition prior to Cenex's chemical applications. The court instructed the jury, over objection from both sides, that it could consider *591 the restoration costs when calculating damages.
In 1998, a jury found Cenex solely negligent, but the negligence and directed liability for nuisance were not the proximate cause of any damage. The DeYoungs unsuccessfully moved for new trial and/or reconsideration partly alleging juror misconduct by one juror who used a lap top computer during the trial. The DeYoungs brought this appeal.

ANALYSIS

A. Dismissal of Hazardous Waste Claim
The issue is whether the trial court erred by granting summary judgment of dismissal on the DeYoungs' statutory hazardous waste claim and concluding it was precluded by the first appeal on principles of res judicata.
In their original complaint, the DeYoungs alleged that Cenex had violated "Washington laws regarding the handling and application of pesticides and other hazardous materials." This court affirmed the dismissal of the claims regarding Cenex's application of pesticides and other hazardous materials.
On remand, the DeYoungs amended their complaint to include a statutory cause of action for private nuisance and a violation of Washington's Hazardous Waste Management Act (HWMA). See RCW 70.105.097 (permitting an individual harmed by a violation of the Act to bring an action for damages). Cenex successfully moved for partial summary judgment on the hazardous waste claim, arguing the HWMA claim was precluded by res judicata. The court reasoned:
This court is of the opinion plaintiffs are barred from litigating any causes of action based upon violation of the Washington Hazardous Waste Management Act. Clearly, the original allegations dismissed by this court were unfortunately very broad and inclusive of the Washington Hazardous Waste Management Act. No specific arguments were advanced either to the trial court or evidently to the Court of Appeals concerning the trial court's original dismissal of claims arising out of allegations contending violation of Washington law regarding the handling of pesticides and chemicals and other hazardous materials. To simply specify the violation of a particular act at this time without alleging any new or different circumstance or facts is simply to repackage the same issue previously dismissed.
The standard of review is de novo, with the appellate court engaging in the same inquiry as the trial court. Brower v. State, 137 Wash.2d 44, 52, 969 P.2d 42 (1998), cert. denied, 526 U.S. 1088, 119 S.Ct. 1498, 143 L.Ed.2d 652 (1999). Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting CR 56(c)).
"`For [res judicata] to apply, a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.'" Civil Service Comm'n of City of Kelso v. City of Kelso, 137 Wash.2d 166, 171, 969 P.2d 474 (1999) (quoting Loveridge v. Fred Meyer, Inc., 125 Wash.2d 759, 763, 887 P.2d 898 (1995)). Res judicata applies to matters that were actually litigated and those that "could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding." Kelly-Hansen v. Kelly-Hansen, 87 Wash. App. 320, 328-29, 941 P.2d 1108 (1997). A grant of summary judgment is a final judgment on the merits with the same preclusive effect as a full trial. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Northwest Youth Services, 97 Wash.App. 226, 233, 983 P.2d 1144 (1999) (collateral estoppel), review denied, 139 Wash.2d 1020, 994 P.2d 845 (2000).
Here, the subject matter is the same. The DeYoungs sought money damages for the alleged injury to the land, focusing on Cenex's use of hazardous chemicals causing the land harm.
With regard to the second factor, we consider:
(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially *592 the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
Kuhlman v. Thomas, 78 Wash.App. 115, 122, 897 P.2d 365 (1995). Here, the same core facts are involved in both claims. No new facts were alleged in the amended complaint or at summary judgment. Both claims also involve the DeYoungs' deprivation of the beneficial use of their property. The rights established in the previous judgment would also be impaired.
Significantly, the DeYoungs alleged in their original complaint that Cenex had violated Washington laws regarding the "handling and application of pesticides and other hazardous materials." In the first appeal we noted: "DeYoungs seem to allege as a separate cause of action the `improper application of chemicals.' However, they did not cite any authority or common law authorities to support their allegation in the trial court, nor do so on appeal." The DeYoungs merely added an allegation of a specific statute, the HWMA, to their amended complaint. Thus, as the trial court ruled, the particular statutory violation was encompassed in the broader original complaint.
Finally, the third and fourth factors identity of parties and persons against whom the claims are madeare satisfied because the parties and persons in this appeal are identical.
Nevertheless, even if the statutory claim had remained viable, it would matter not. Generally, the violation of a statute is merely evidence of negligence. RCW 5.40.050; Mathis v. Ammons, 84 Wash.App. 411, 418, 928 P.2d 431 (1996). Here, the jury did find negligence but failed to find the necessary proximate cause for resulting damage.
Accordingly, we conclude the court did not err by dismissing the statutory hazardous waste claim.

B. Denial of CR 60(b) Motion
The issue is whether the trial court erred by denying the DeYoungs' CR 60(b) motion for relief from judgment against them on the promissory note with Cenex and concluding the matter was barred by principles of res judicata.
In November 1992, Cenex counterclaimed against the DeYoungs for $130,000 based on the promissory note secured by its second mortgage. In August 1993, Cenex, as secondary mortgagee and junior lienor, exercised its statutory right of redemption under RCW 6.23, when Travelers foreclosed its first mortgage on the DeYoungs' property. Cenex paid Travelers a little under $150,000. In July 1994, the trial court granted summary judgment to Cenex on its counterclaim for the promissory note.
In its 1994 memorandum opinion, the court stated: "Finally, it is noted plaintiffs have not made any payment on the promissory note. [Cenex] is entitled to payment and entitled to summary judgment against plaintiffs for all amounts due and owing under the promissory note." The DeYoungs appealed, and we affirmed the trial court's judgment on the note even though we reversed on other issues. The DeYoungs did not seek review of our decision on the note; thus, that decision became final.
In September 1998, the DeYoungs unsuccessfully asked for relief from the judgment on the counterclaim under CR 60(b). The DeYoungs argued that Cenex's judgment had been satisfied as a result of Cenex's redemption of the DeYoungs' property. The court ruled that Cenex was not precluded from suing on the note and was collaterally estopped from claiming the promissory note had been satisfied. The trial court reasoned the DeYoungs had failed to properly assert the defense of satisfaction or payment as required by CR 8(c).
We review a trial court's denial of a motion to vacate judgment for an abuse of discretion. State ex rel. Turner v. Briggs, 94 Wash.App. 299, 302, 971 P.2d 581 (1999). A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons. State ex rel. Campbell v. Cook, 86 Wash.App. 761, 766, 938 P.2d 345 (1997). A mortgagee can elect to sue either on the mortgage or on the promissory note. Seattle *593 Savings & Loan Ass'n v. Gardner J. Gwinn, Inc., 171 Wash. 695, 698, 19 P.2d 111 (1933).
The mortgagee may sue and obtain a judgment upon the notes and enforce it by levy upon any property of the debtor. If the judgment is not satisfied in this manner, the mortgagee still can foreclose on the mortgaged property to collect the balance. Alternatively, the mortgagee may foreclose on the mortgaged property and obtain a deficiency judgment.
American Federal Sav. & Loan Ass'n of Tacoma v. McCaffrey, 107 Wash.2d 181, 189, 728 P.2d 155 (1986). Concurrent actions to execute a judgment and foreclose on the mortgaged property are, however, prohibited. RCW 61.12.120; American Federal, 107 Wash.2d at 190, 728 P.2d 155.
The DeYoungs incorrectly rely on Washington Mut. Sav. Bank v. United States, 115 Wash.2d 52, 60, 793 P.2d 969 (1990) to argue that Cenex, as a junior mortgagee, could not sue on the underlying promissory note because it exercised its statutory right of redemption on the property. Washington Mutual concerned a non-judicial foreclosure of a deed of trust, rather than a judicial foreclosure of a mortgage. The court specifically stated it was not addressing whether there could be a suit on the note: "We do not herein address the matter of a junior deed of trust holder's continued right to sue the debtor on the promissory note because it is not before us." Id. at 59, 793 P.2d 969. Justice Guy emphasized this point in his concurrence: "Washington law provides that no deficiency judgment may be obtained after a deed of trust foreclosure. However, where a junior deed of trust holder does not foreclose, that junior deed of trust holder is not precluded from suing under the note." Id. at 60, 793 P.2d 969.
Significantly, Cenex did not foreclose on its second mortgage. It merely exercised its redemption rights under RCW 6.23, once its junior lien was extinguished by a senior lien-holder's foreclosure. See generally 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE, Real Estate: Transactions § 18.19, at 361-64 (1995) (explaining how a junior lienor may redeem property after lien is extinguished by senior lienor's foreclosure). Cenex's lien was extinguished when Travelers named Cenex as a party in its foreclosure suit. See U.S. Bank v. Hursey, 116 Wash.2d 522, 526, 806 P.2d 245 (1991) (a junior lienor's interest is extinguished when it is joined in the foreclosure of a senior lien). Therefore, Cenex was not barred from suing on the note. This result is logical and equitable because the DeYoungs' debt to Cenex was never paid. Instead, Cenex put out another $150,000 to redeem the land in an effort to protect its security. Cenex needed to get at least $280,000 from the land to break even, the $150,000 paid to Travelers, plus the $130,000 DeYoungs owed on its note with Cenex.
The DeYoungs failed to exercise their right to redeem the land from Cenex or sell their redemption rights in an effort to realize on any excess value that might remain in the land. See RCW 6.23.010 (defining who may redeem); 6.23.020 (permitting redemption from the purchaser who acquired title at sheriff's sale); 6.23.040 (permitting redemption from previous redemptioner). This is not surprising because in 1992, the DeYoungs alleged significant land damage from Cenex's chemical applications. The DeYoungs' decision not to redeem the property is consistent with their decision that it was not worthwhile to keep up the land payments. Similarly, the record does not reflect that the DeYoungs requested the foreclosure court to set an upset price under RCW 61.12.060 to protect any excess land value or protect against a windfall bid. See American Federal, 107 Wash.2d at 187, 728 P.2d 155 (a trial court has the discretion to fix an upset price based on economic conditions or peculiarities of the mortgaged property).
Furthermore, CR 8(c) requires a party to plead the affirmative defense of satisfaction in the party's answer or it is waived. In general, if the defenses enumerated in CR 8(c) are not affirmatively pled, asserted with a motion under CR 12(b), or tried by the express or implied consent of the parties, such defenses are waived. Rainier Nat'l Bank v. Lewis, 30 Wash.App. 419, 422, 635 P.2d 153 (1981). Here, the DeYoungs never pleaded this defense, but merely sought to offset the promissory note judgment debt with the damages they sought to *594 recover from Cenex. The DeYoungs waived the defense.
The trial court also correctly reasoned that the DeYoungs were barred from re-litigating liability on the note because they lost on this issue in the previous appeal and failed to seek further review of our decision. See 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE, Trial Civil Practice § 372, at 753 (1996) (the failure to appeal renders judgment on the merits standing). We agree the judgment was final and could not be re-litigated.
In sum, the trial court stated tenable reasons for denying the DeYoungs' CR 60(b) motion. Therefore, we conclude the trial court did not err denying the CR 60(b) motion to set aside the judgment on the promissory note.

C. Juror Misconduct
The issue is whether the trial court erred when denying the DeYoungs' motion for new trial based upon juror misconduct in one juror's use of a computer during trial and deliberations.
The determination of juror misconduct is within the sound discretion of the trial court, and it will not be disturbed unless the court abused its discretion. Johnson v. Carbon, 63 Wash.App. 294, 301, 818 P.2d 603 (1991). A trial court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. Richards v. Overlake Hosp. Medical Center, 59 Wash.App. 266, 271, 796 P.2d 737 (1990). Appellate courts are generally reluctant to inquire into the manner by which a jury reaches its verdict. State v. Balisok, 123 Wash.2d 114, 117, 866 P.2d 631 (1994). "A strong, affirmative showing of misconduct is necessary in order to overcome the policy favoring stable and certain verdicts and the secret, frank and free discussion of the evidence by the jury." Id. at 117-18, 866 P.2d 631.
Courts determine prejudice by asking whether withheld or extraneous information could have affected the jury's deliberations. State v. Barnes, 85 Wash.App. 638, 669, 932 P.2d 669 (1997). We afford great deference to the trial court's determination that no prejudice resulted. Richards, 59 Wash.App. at 271, 796 P.2d 737. The mere possibility or remote possibility of prejudice, without more, is not enough to set aside the verdict. Hammel v. Rife, 37 Wash.App. 577, 585, 682 P.2d 949 (1984).
A juror's use of a computer does not, per se, require a new trial. Cf. United States v. Leahy, 82 F.3d 624, 630 n. 6 (5th Cir.1996) (foreperson's use of his personal computer to compose a note which he then brought to the jury did not taint the juror's deliberations) (dictum). Here, the record does not show extraneous evidence was introduced into the jury's deliberations. Another juror's affidavit merely states that Deborah Doran worked on her lap top computer during recesses and during deliberation, and recounts Ms. Doran telling another juror that she was trying to get some work done during the breaks.
According to Ms. Doran, she used her computer during breaks in the trial to play solitaire and draft an article for a professional newsletter unrelated to the trial. Her affidavit states she did not have the computer during deliberation because she saw a posted sign that stated jurors could not bring cellular phones with them and concluded that computers were likewise forbidden.
Finally, the court instructed the jurors to base their decision on the testimony of witnesses and exhibits admitted into evidence at trial. Jurors are presumed to follow the court's instructions. State v. Pastrana, 94 Wash.App. 463, 480, 972 P.2d 557, review denied, 138 Wash.2d 1007, 984 P.2d 1035 (1999).
The court basically relied on the above reasoning. We conclude it did not abuse its discretion when deciding not to grant a new trial for juror misconduct.
Affirmed.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public *595 record pursuant to RCW 2.06.040, it is so ordered.
SWEENEY, J., and SCHULTHEIS, J., concur.