60 P.3d 681 (2003)
114 Wash.App. 866
In re the MARRIAGE OF Laurie Diane KNUTSON, Appellant, and
Bradley James Knutson, Respondent.
No. 20497-9-III.
Court of Appeals of Washington, Division 3, Panel One.
January 9, 2003.
*682 Jacqueline J. Shea, Shea & Brown, Richland, WA, for Appellant.
Kolleen K. Ledgerwood, Kennewick, WA, for Respondent.
*683 BROWN, C.J.
In a September 2000 marriage dissolution decree, the trial court awarded Laurie Knutson a specified dollar amount of her former husband's 401(k) (Putnam) plan using a Qualified Domestic Relations Order (QDRO) based upon a June 2000 valuation of the Putnam plan. The overall award was designed to grant an even split of the marital assets existing about the time of the May 2000 trial by using a specified balancing judgment. The Putnam plan lost significant value in a declining stock market before the QDRO was processed creating, from Mr. Knutson's view, a disadvantageous property division under the later market conditions. In May 2001, Mr. Knutson persuaded the trial court, under CR 60(b), to vacate and amend the decree to effect an equal division of the marital estate based upon a then-current lower evaluation of the Putnam plan with a new lower equalizing judgment. Ms. Knutson appealed. Because CR 60(b) is inapplicable under the circumstances here, we reverse.

FACTS
Mr. and Ms. Knutson started dissolution proceedings in 1999. One of the marital assets was Mr. Knutson's Putnam plan, a 401(k) plan worth approximately $276,953 as of June 30, 2000, shortly after the trial. Both parties proposed splitting the plan in half. Viewed overall, the competing plans projected an even split of net marital assets.
The Benton County Superior Court entered a dissolution decree on September 6, 2000, supported by an asset list with valuations shown from around the time of trial. The decree partly ordered Mr. Knutson to transfer $234,572 of the Putnam plan to a retirement account of Ms. Knutson's choice and set an equalizing judgment. The distribution of the Putnam plan funds were ordered pursuant to a QDRO.
Later in September, Mr. Knutson's counsel sent Ms. Knutson's counsel a draft of the QDRO, "which you are welcome to get filed and entered with the court." Clerk's Papers (CP) at 52. Ms. Knutson filed the QDRO on December 22, 2000. On December 28, Mr. Knutson sent the QDRO to an escrow company for administration and disbursement. On January 22, 2001, the escrow company notified the parties it had reviewed the QDRO and was prepared to distribute the $234,572 upon the completion of necessary paperwork.
On January 29, Mr. Knutson's counsel sent Ms. Knutson's counsel a letter notifying her that the Putnam plan had lost $58,553 in value between June 30, 2000 and December 31, 2000. According to Mr. Knutson's counsel, "the equalizing transfer to Mrs. Knutson should be $205,295.00 instead of the $234,572.00 used in the Qualified Domestic Relations Order." CP at 63. Counsel proposed amending the QDRO and stated Mr. Knutson's intent to obtain an order of stay to prevent disbursement of the Putnam plan's funds until there had been a hearing on the matter.
On January 30, 2001, Mr. Knutson obtained an ex parte restraining order and order to show cause. On February 2, the trial court entered an agreed order staying administration and distribution of the Putnam plan until further order. On February 21, Mr. Knutson filed a CR 60(b) motion to vacate and amend provisions of the decree affecting award of the Putnam funds to Ms. Knutson.
At the May 2, 2001 hearing on the motion, the following colloquy took place between the trial court and Ms. Knutson's counsel:
The Court: One question, is there any question that the intent of the parties was to divide the assets essentially equally?
[Counsel]: At the time the decree reflects what our reflection to that is to get the $234,000. I want to answer that directly. At that time that reflected their intentions.
The Court: Didn't answer my question. Yes or no was the intent of the parties at the time the assets were divided to divide them equally.
[Counsel]: I believe that the document reflects their intention. If the answer to that is yes I would say, yes, Your Honor.
Report of Proceedings (RP) at 16.
Citing CR 59, the trial court reasoned the loss in value during the delay in filing the *684 QDRO worked a substantial injustice to both parties. As the court summarized:
I don't recall there being argued any reason that they should not be divided fairly equally or there was any justification for an award other than roughly 50/50. It seems to me that the assets should be re-evaluated or the parties would be able to come to a fairly quick resolution of this, figure out what the value of themthe assets are and get them divided 50/50 and get that entered immediately and then the risk of increase or loss will be on each party as opposed to putting it on one party or the other party.
I don't think it's fair to put it on one party or the other party. If I enforce the decree as it is, I put all the loss on the respondent, and as I indicated earlier, there is probably facts where I could at least possibly put the loss entirely on the petitioner but I don't think that is really fair or what either party intended. So that will be my ruling.
RP at 20.
On August 17, the trial court entered an order vacating the decree and QDRO, and amending the dissolution decree to require Mr. Knutson to transfer 50 percent of three different investment plans plus an additional $54,554 from the remaining half of the Putnam plan. On August 31, the trial court entered an amended QDRO ordering Mr. Knutson to transfer to Ms. Knutson "50% of the Plan value as of August 31, 2001, plus the sum of $54,554 from the remaining 50% Plan value." CP at 6. The trial court also amended the equalizing judgment.
Ms. Knutson appealed.

ANALYSIS

A. Collateral Estoppel
The issue is whether collateral estoppel bars Mr. Knutson's motion to vacate the dissolution decree and QDRO.
This issue is not properly before us. Ms. Knutson did not raise a collateral estoppel argument at any time in the proceedings below. Ordinarily, we will not consider an issue raised for the first time on appeal. In re Marriage of Williams, 84 Wash.App. 263, 273, 927 P.2d 679 (1996); RAP 2.5(a).
Moreover, the authority Ms. Knutson mainly relies upon, In re Marriage of Mudgett, 41 Wash.App. 337, 704 P.2d 169 (1985), is distinguishable. There, the husband filed a complaint for partition of property and declaratory relief three years after entry of the decree. Id. at 339, 704 P.2d 169. Division One of this Court affirmed summary judgment dismissal, partly on collateral estoppel grounds. Id. at 342-43, 704 P.2d 169. Here, Mr. Knutson did not file an entirely new action, rather, he filed a motion to vacate and modify the decree. Accordingly, the precise issue before this court is whether the trial court erred in granting the motion under CR 60(b), our next issue.

B. Applicability of CR 60(b)
The issue is whether the trial court erred in vacating and modifying the September 2000 dissolution decree considering it had unambiguously awarded Ms. Knutson a division of assets based upon the valuations decided at about the time of trial and incorporated in to the original decree.
While the parties have partly argued this matter as though it were a declaratory judgment, Mr. Knutson filed a CR 60 motion to vacate and modify the decree and the QDRO. Our focus is whether the trial court erred in granting the motion and then modifying the decree and QDRO. We review a trial court's decision on a motion to vacate for an abuse of discretion. DeYoung v. Cenex, 100 Wash.App. 885, 894, 1 P.3d 587 (2000), review denied, 146 Wash.2d 1016, 51 P.3d 87 (2002). "A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons." Id. (citing State ex rel. Campbell v. Cook, 86 Wash.App. 761, 766, 938 P.2d 345 (1997)).
The provisions of a dissolution decree "as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." RCW 26.09.170(1). Here, Mr. Knutson relied on CR 60(b)(3) and (11).
CR 60(b) partly states:

*685 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
....
(3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);
....
(11) Any other reason justifying relief from the operation of the judgment.
CR 60(b)(3) is not a valid basis for vacating the judgment. Mr. Knutson could have easily monitored the changing value of the Putnam plan. Moreover, the record indicates Mr. Knutson had notice of the Putnam plan's fluctuations. He cannot claim he was unfairly surprised by new evidence.
Further, the transitory nature of the "evidence" does not lend itself to application of CR 60(b)(3). For purposes of the decree, the parties valued the Putnam plan as of June 30, 2000, a time shortly after trial. The value of such a plan necessarily fluctuates with the ever-changing market. Notably, all assets were valued at about the time of trial according to schedules presented to the trial court. Following Mr. Knutson's flawed logic, "newly discovered evidence" would occur with every change in the plan's value, or any other asset previously valued, thereby justifying vacation of the decree under CR 60(b)(3). However, CR 60(b)(3) applies to evidence existing at the time the decree was entered, not later. Because Mr. Knutson has not shown the loss in value occurred before entry of the decree, his resort to CR 60(b)(3) fails.
CR 60(b)(11) applies sparingly to situations "`involving extraordinary circumstances not covered by any other section of the rules.'" In re Marriage of Irwin, 64 Wash.App. 38, 63, 822 P.2d 797 (1992) (quoting In re Marriage of Yearout, 41 Wash.App. 897, 902, 707 P.2d 1367 (1985)). "Such circumstances must relate to irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings." Yearout, 41 Wash.App. at 902, 707 P.2d 1367 (citing State v. Keller, 32 Wash.App. 135, 141, 647 P.2d 35 (1982)); see also Irwin, 64 Wash.App. at 63, 822 P.2d 797 (quoting Yearout with approval). A change in a party's financial circumstances will not justify application of CR 60(b)(11) to vacate a dissolution decree. Irwin, 64 Wash.App. at 64, 822 P.2d 797; see also Yearout, 41 Wash.App. at 901-02, 707 P.2d 1367; 1 BARBARA BARKER & IREEN SCHARF, WASHINGTON PRACTICE: METHODS OF PRACTICE § 10.5, at 141 (3d ed.1989).
While the Putnam plan's value change was certainly unfortunate from Mr. Knutson's point of view, it was not an extraordinary event for purposes of CR 60(b)(11). The trial court entered a decree dividing the marital assets in a manner consistent with the intent of the parties as of the time of trial and further directed them to effectuate the decree through a QDRO. Neither party appealed the decree. Both parties were unhurried in processing the QDRO while the Putnam plan fluctuated in value.
Mr. Knutson complains Ms. Knutson had control of the QDRO for some period of time to his disadvantage. But, both parties had more or less equal incentives and disincentives to process the QDRO in a volatile market environment. In a stable stock market, this type of argument would be hollow; naturally, in a rising and falling market both parties bear some risk in deciding upon a particular valuation date. The evidence here shows a June 2000 valuation date was agreed. In light of all the other assets to be divided by the court and its use of a balancing judgment at that time to effect an equal division between the parties, the interests of finality are well served by carefully observing the dictates of CR 60(b).
Moreover, Mr. Knutson did not appeal the decree, remained silent for more than a month after Ms. Knutson filed the QDRO, and took no action until more than three months after the trial court entered the decree. Mr. Knutson's failure to appreciate the Putnam plan's vulnerability to market forces does not rise to an extraordinary circumstance justifying resort to CR 60(b)(11). See Irwin, 64 Wash.App. at 63-64, 822 P.2d 797 (reasoning the husband's declining income *686 did not justify granting relief under CR 60(b)(11)).
Further, the trial court relied on CR 59(a)(9), reasoning the situation worked an injustice. As noted, Mr. Knutson filed his motion under CR 60(b)(3) and (11), thereby implicating different review standards. Moreover, a party cannot file a CR 59 motion more than 10 days after entry of judgment. CR 59(b). And the same time deadline applies to a trial court's sua sponte consideration of such a motion. CR 59(c). Given that Mr. Knutson did not challenge the decree until more than five months after its entry, the trial court erred in relying on CR 59. See generally Metz v. Sarandos, 91 Wash.App. 357, 359-60, 957 P.2d 795 (1998) (reasoning trial court's enlargement of 10-day CR 59 deadline constituted reversible error).
In light of the foregoing, the trial court abused its discretion in granting Mr. Knutson's motion to vacate and reopening the decree for modification. The remedy is to reverse the trial court and remand for enforcement of the original decree and QDRO.
Reversed.
WE CONCUR: SWEENEY and KATO, JJ.