[No. 29674-4-I.   Division One.   December 14, 1992.]

*In the Matter of the Marriage of* GENE RODNEY THIER, *Respondent, and* TRACY LYNN THIER, *Appellant.*

*Jaclyn R. Sinclair* and *Stiltner, Sinclair, Clement & Foster,* for appellant.

*David T. Patterson* and *Patterson, Metcalf, Rowley & Schwimmer,* for respondent.

COLEMAN, J. — Tracy Thier appeals the Superior Court's decree of dissolution awarding primary residential care of her minor child, Andrew Thier, to her husband, Gene Thier. Tracy contends that the Superior Court erred in failing to find that the parties entered into a separation agreement and in failing to enforce its custody provisions, erred in holding that she was estopped to contest Andrew's paternity, erred in permitting Gene to seek custody of Andrew under the Uniform Parentage Act, and erred in finding a de facto adoption of Andrew by his presumed father, Gene. In addition, Tracy contends that the Superior Court erred in finding that Gene had been Andrew's primary caretaker and erred in failing to make a finding that the couple had experienced several instances of domestic violence. We affirm.

Gene and Tracy Thier began dating in 1985. Their dating relationship continued into 1987 except for a 4 to 5 month period during which Tracy dated Brett Annear. Gene and Tracy married on March 31, 1987, in Kitsap County, Washington. A son, Andrew, was born 2 months later on June 1, 1987, and Gene Thier was listed on the birth certificate as the father of the child. For the next few months, Tracy and the baby stayed with Gene Thier's parents while Gene completed a training period at the Great Lakes Naval Station.

In December 1987 Gene, Tracy, and Andrew moved to Adak, Alaska, a remote military base in the Aleutian Islands. While living in Adak, both Gene and Tracy were employed. The couple experienced marital discord, and at least one incident of domestic violence occurred which resulted in minor injuries to Tracy. As the dependent, Tracy was ordered to leave the island. Prior to her departure, Tracy and Gene signed a written separation agreement providing that Andrew would stay with Gene until February 1, 1990, a period of 18 months. After that time, permanent custody was to shift to Tracy.

During the next 18 months, contact between Tracy and Andrew was infrequent. Andrew visited Tracy in Washington state on two occasions. In addition, when Gene completed his military service and returned to Washington in December 1989, Gene, Tracy, and Andrew lived together briefly in one last effort at reconciliation. Failing that, on February 13, 1990, Gene petitioned for dissolution of marriage, proposing a parenting plan that gave him primary residential care of Andrew.

In Tracy's response to Gene's petition for dissolution, she admitted that Andrew was the issue of the marriage. However, when the superior court commissioner entered a temporary order granting primary care of Andrew to Gene and ordering Tracy to pay child support, Tracy filed an amended response claiming that Gene was not Andrew's father. Tracy named Brett Annear as the father, requested an order for blood tests, and initiated a paternity action to legally determine Andrew's parentage.[1] Subsequent blood test results indicated a 99.2 percent probability that Brett Annear is Andrew's biological father and showed a zero probability that Gene is Andrew's biological father. A guardian ad litem was appointed to protect Andrew's interests.

Trial was held on August 14 and 15, 1991. At the conclusion of the evidence, the court acknowledged "that the bio-

---

[1] Shortly thereafter, Gene Thier filed a cross claim against Brett Annear, attempting to terminate Annear's parental rights in the .event the blood test results supported Tracy's allegation of paternity.

logical father of the child Andrew is Brett Annear and not Gene Thier." However, the court had before it testimony from the child's guardian ad litem concerning the emotional bond between Gene and Andrew and the lack of a relationship between Brett Annear and Andrew, and the court accepted the guardian ad litem's recommendation that it would not be in Andrew's best interest to legally determine his parentage. Accordingly, the court did not permit Tracy to contest Andrew's paternity. In addition, the court found a de facto adoption by Gene Thier, consented to by the actions of both Tracy and Brett Annear. The court then awarded primary care of Andrew to Gene Thier based on the criteria set forth in RCW 26.09.187.[2] The findings of fact and conclusions of law and the decree of dissolution were entered on November 6, 1991. Tracy Thier appeals.

We initially consider whether the Superior Court erred in failing to find that the parties entered into a separation agreement and in failing to enforce its custody provisions.

Tracy contends that the Superior Court erred in finding that "[a]ny purported contract entered into between the parties at the time of their separation . . . has not been entered into evidence, and there is a failure of proof as to the contents and enforceability of any said contract." "[F]indings of fact will not be disturbed on appeal if they are supported by substantial evidence." *In re Marriage of Vander Veen*, 62 Wn. App. 861, 865, 815 P.2d 843 (1991). Although both Tracy and Gene testified to having signed a separation agreement, the testimony at trial revealed that more than one agreement had been prepared. In addition, the Superior Court correctly noted that neither party chose to introduce any agreement into evidence. Because substantial evidence supports the Superior Court's finding that there was a failure of proof as to the contents of the agreement, this finding should not be disturbed on appeal.

---

[2]RCW 26.09.187 provides "[c]riteria for establishing [a] permanent parenting plan."

However, even assuming that the terms of the claimed separation agreement were before the court, the custody provisions of the agreement were not binding.[3] RCW 26.09-.070(3) provides in relevant part:

> If either or both of the parties to a separation contract shall . . . at a subsequent time[ ] petition the court for dissolution of their marriage, . . . the contract, *except for those terms providing for a parenting plan for the children,* shall be binding upon the court unless it finds . . . that the separation contract was unfair at the time of its execution.

Thus, even if the separation agreement had been admitted into evidence, the terms of the agreement pertaining to child custody were not binding. Tracy herself testified that she had been told the agreement was not binding. We find no error in the court's refusal to enforce the terms of any agreement pertaining to custody.

We next decide whether the Superior Court erred in electing not to enter a court decree establishing Andrew's paternity. A man is presumed to be a child's biological father if:

> (a) [h]e and the child's [biological] mother are or have been married to each other and the child is born during the marriage . . .; or
>
> . . . .
>
> (d) [w]hile the child is under the age of majority, he receives the child into his home and openly holds out the child as his child[.]

RCW 26.26.040(1)(a), (d). This "presumption is rebutted by *a court decree* establishing paternity of the child by another man", but the presumption may only be rebutted "*in an appropriate action* . . . by clear, cogent, and convincing evidence."[4] (Italics ours.) RCW 26.26.040(2).

---

[3]According to the testimony, the custody provisions of the claimed agreement provided that Gene should have temporary custody of Andrew during the first 18 months of their separation and that Tracy should have permanent custody thereafter.

[4]RCW 26.26.060(1)(a) provides: "[A] child's natural mother . . . may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship." However, "[a] man presumed to be a child's father under RCW 26.26.040 may bring an action for the purpose of declaring

■ Consistent with the statute, Washington courts have recognized that "in some circumstances the rights of the child will be better served by maintaining a stable family relationship than by allowing a paternity action." *McDaniels v. Carlson*, 108 Wn.2d 299, 311, 738 P.2d 254 (1987). In *McDaniels*, the court stated:

> Child development experts widely stress the importance of stability and predictability in parent/child relationships, even where the parent figure is not the [biological] parent. Our courts and Legislature have echoed these concerns. A paternity suit, by its very nature, threatens the stability of the child's world. . . . It may be true that a child's interests are generally served by accurate, as opposed to inaccurate or stipulated, paternity determinations. However, it is possible that in some circumstances a child's interests will be even better served by no paternity determination at all. . . . The best interests of the child standard does not entitle a court to presume that paternity determination is *automatically* in the child's best interest. Therefore, absent a showing that such determination is in fact within the child's best interests, this standard cannot be invoked *on behalf of someone other than the child.*

(Citations omitted. Some italics ours.) *McDaniels*, at 310. The *McDaniels* court makes clear that, in deciding whether paternity actions should proceed, the child's best interests are paramount. *See McDaniels*, at 311-13.

During trial, the testimony revealed that Tracy had been dating both Gene Thier and Brett Annear during the months preceding her marriage to Gene and that at the time of her marriage, Tracy was approximately 7 months pregnant. Gene testified that he was aware of the possibility that he was not the biological father of the child. However, because Gene was married to Tracy at the time of Andrew's birth, he was entitled to the statutory presumption of paternity. Consistent with this presumption, Tracy identified Gene Thier as the father of her child to the hospital staff, on the birth certificate, in the separation agreement signed by the parties, and in her initial response to the court concern-

the nonexistence of the father and child relationship only if the action is brought within a reasonable time after obtaining knowledge of relevant facts." RCW 26.26.060(1)(b).

ing Gene's petition for dissolution. Although subsequent blood tests showed that Gene was not the biological father, the trial court determined that it was not in Andrew's best interests to proceed with the paternity action.

In making its determination, the trial court did not abuse its discretion. Gene emotionally bonded with Andrew and provided a stable home for Andrew during the first 4½ years of his life, and Tracy recognized the benefits of maintaining their father-son relationship by publicly identifying Gene as Andrew's father up until the superior court commissioner designated Gene as the primary caretaker. During trial, Tracy's testimony demonstrated that identifying Gene as Andrew's father was to Andrew's benefit. Noting that "Brett didn't want anything to do with it", Tracy explained that she hadn't told the truth about Andrew's parentage because she wanted to protect Andrew. Tracy stated, "Gene has been there since Andrew's birth and that is the only daddy he knows. I'm protecting that."

Although Tracy's conduct and testimony demonstrated that maintaining the father-son relationship between Gene and Andrew was in Andrew's best interests, Tracy nevertheless argued during dissolution that paternity proceedings should proceed to permit a legal determination that Gene is not Andrew's biological father. We can only assume that Tracy changed her position at this late stage and attempted to contest Andrew's paternity because it was in *her* best interests. However, absent a showing that a paternity determination is in the child's best interests, the best interests of. the child "standard cannot be invoked *on behalf of someone other than the child*." (Italics ours.) *McDaniels*, at 310. Where a paternity determination is clearly not in Andrew's best interests, Tracy cannot sacrifice Andrew's best interests to protect her own. We find no error in the Superior Court's decision not to proceed with the paternity action.

■ We next address whether the trial court erred by permitting Gene to seek custody of Andrew under the Uniform Parentage Act. Under the act, a presumed parent such as Gene is entitled to seek custody of his minor child upon

equal footing with the biological mother. *Compare* RCW 26.26.040 (factors giving rise to a presumption of paternity) *with* RCW 26.09.184 (directs parents in formulating a permanent parenting plan). However, the presumption of paternity may be overcome by *a court order* declaring nonparentage after receiving "clear, cogent, and convincing evidence." RCW 26.26.040(2). If the presumption is overcome, the nonparent may still seek custody but will only prevail if he or she is able to make a showing that the child's growth and development would be detrimentally affected by placement with the biological parent. *See In re Marriage of Allen*, 28 Wn. App. 637, 646-49, 626 P.2d 16 (1981).

Tracy contends that the Superior Court erred by permitting Gene to seek custody as a presumed parent under the Uniform Parentage Act. She argues that Gene should only be permitted to seek custody as a nonparent, with the burden of showing that placement with Tracy would be detrimental to Andrew's growth and development. However, as noted *supra*, the court chose not to enter an order legally determining parentage. Lacking a court order declaring nonparentage, Gene was still entitled to the statutory presumption of paternity, *see* RCW 26.26.040(2), and to seek custody of Andrew under the Uniform Parentage Act.[5]

We next address whether the Superior Court erred in finding that Gene had been Andrew's primary caretaker.

---

[5]Although Tracy also argues that the Superior Court erred in finding a de facto adoption of Andrew by Gene, we need not reach the issue because we affirm the court's determination that Gene was entitled to seek custody upon equal footing with the natural mother. However, we seriously doubt whether a de facto adoption has arisen here. A de facto adoption generally arises when some attempt at formal adoption "falls short of completion of statutory adoption," and no attempt to formally adopt is apparent here. *See McGarvey v. State*, 311 Md. 233, 234, 533 A.2d 690, 691 (1987). In addition, no Washington cases recognize a doctrine of de facto adoption, and courts from other jurisdictions have looked disfavorably upon it. *See Proffitt v. Evans*, 433 S.W.2d 876, 877 (Ky. Ct. App. 1968) ("[A]doption has always been and is now strictly a statutory creation.' To recognize a 'de facto' adoption would bring a condition of chaos to the law.") (quoting *Bedinger v. Graybill's Executor & Trustee*, 302 S.W.2d 594 (Ky. Ct. App. 1957)); *Bellinger v. Boatmen's Nat'l Bank*, 779 S.W.2d 647, 652 (Mo. Ct. App. 1989) (no error in failing to find de facto adoption of stepson during intestacy proceedings).

Findings of fact will not be disturbed on appeal if they are supported by substantial evidence. *See In re Marriage of Vander Veen*, 62 Wn. App. 861, 865, 815 P.2d 843 (1991). The record reveals that Tracy was the primary caretaker of Andrew during his first 6 months and for 2 months just prior to the superior court commissioner's award of temporary custody, a total of 8 months. In contrast, the record reveals that Gene was the primary caretaker during the 18-month period that he had temporary custody in Adak. In addition, following the superior court commissioner's award of temporary custody to Gene in March 1990, Gene was the primary caretaker until the decree of dissolution was entered on November 6, 1991, 19 months later. During this period of temporary custody, Tracy and Gene "spent substantially similar amounts of waking time with Andrew, but he ordinarily slept at his father's house." Brief of Respondent, at 25. In light of these facts, we conclude that substantial evidence supported the trial court's finding that Gene had been Andrew's primary caretaker during the 4 years 5 months which elapsed between Andrew's birth and the decree of dissolution.

Finally, we consider whether the Superior Court erred in failing to make a finding that the couple had experienced several instances of domestic violence.

The record discloses three instances of domestic violence between the parties which occurred more than 3 years prior to the court's entry of findings of fact and conclusions of law. Although it was undisputed that during the last incident Gene Thier was removed from the home by military police and that Tracy went to the hospital with minor injuries, the circumstances of the first two incidents were in dispute.

In considering the parties' disputed testimony, the court and the guardian ad litem both found that Gene was a more credible witness than Tracy. On balance, the Superior Court determined that the evidence of domestic violence was not of such significance as to carry weight concerning the custody issue, and accordingly, no findings were entered pertaining to them. In light of the Superior Court's discretion

in weighing the evidence and the credibility of the witnesses, we find that the failure to enter findings concerning domestic violence does not amount to reversible error.

The decision of the Superior Court is affirmed.

BAKER and AGID, JJ., concur.

Review denied at 121 Wn.2d 1021 (1993).