[Nos. 38822-3-I; 38823-1-I.   Division One.   September 14, 1998.]

*In the Matter of the Marriage of* WENDY M., *Respondent*, and MICHAEL M., *Appellant*.

*In the Matter of the Parentage of* J.P.M., MICHAEL M., *Appellant*, and WENDY M., *Respondent*.

*William A. Buchanan* of *Law Office of William A. Buchanan*, for appellant.

*Steven B. Shea*, for respondent.

*Joanne M. Primavera*, guardian ad litem.

GROSSE, J. — We affirm the denial of Michael's petition to disestablish his paternity of J.P.M. (hereinafter referred to as J.M.).[1] In doing so, we hold that the trial court did not err in finding the denial was in the best interests of the child. Due to the absence of an order establishing paternity in another man, Michael is still the presumed father and the trial court did not err in ordering him to pay child support. We reject Michael's argument that a standard other than the best interests of the child should apply to disestablishment petitions by a presumed father.

Wendy and Michael were married for eight years. In June 1992, Wendy filed a petition for dissolution of the marriage. Three children were born during the marriage, but J.M. is the only child at issue here. The child was born on September 26, 1989. J.M.'s birth certificate lists Michael as the father.

In her petition for dissolution, Wendy requested child support for the three children. In response, Michael filed a declaration denying paternity of J.M. and sought an order disestablishing it. Michael's declaration stated that Wendy and Michael separated in October 1988 and shortly thereafter Wendy began living with another man. While Michael's declaration stated that Wendy and he had sexual relations in December 1988, Michael asserted that he was not the father. Wendy claims J.M. was likely conceived in December. Pursuant to court order, DNA tests were performed and Michael was excluded as J.M.'s biological father.

---

[1] Due to the nature of this action, the parties involved will be identified by first names and initials only.

A temporary parenting plan was approved in June 1992 under which all of the children, including J.M.; were to reside primarily with Wendy, but would live with Michael during designated periods. A guardian ad litem was appointed to represent J.M. The guardian ad litem recommended that Michael's paternity not be disestablished because it would not be in the best interests of J.M.

A decree of dissolution was entered in January 1994. The court denied Michael's request to disestablish paternity, but retained jurisdiction for the purpose of adding the alleged father as an additional party. In its findings of fact, the court found that Michael was not the natural father of J.M., but nonetheless the child was dependent upon Michael for support. The court ordered Michael to pay support for all three children.

Michael located the alleged father and gave him notice of the dissolution proceeding and an opportunity to become a party to the action. The alleged father declined the offer to join the proceeding. At a subsequent hearing, the trial court found that it would not be in J.M.'s best interests to have the alleged father in his life. The alleged father was a convicted felon incarcerated in a federal prison in Colorado. He had never met or seen J.M. Paternity has never been established.

In reaching its decision to dismiss Michael's petition to disestablish paternity, the trial court applied the factors set forth in *McDaniels v. Carlson*[2] and concluded it was in J.M.'s best interests not to disestablish Michael's paternity. Further, the court concluded that in light of its denial of Michael's petition, and because no other person was determined to be the actual father of J.M., Michael remained the presumed father of the child and continued to have a statutory duty to support him. Michael appeals.

## DISCUSSION

Michael claims the trial court erred by analyzing his pe-

---

[2]*McDaniels v. Carlson*, 108 Wn.2d 299, 738 P.2d 254 (1987).

tition for the disestablishment of his paternity under the "best interests of the child" standard and the factors set forth in *McDaniels*.[3] He argues that the standard and factors apply only to paternity actions filed by a person *outside* the child's present family, not to petitions filed by a presumed father. But, Michael fails to identify what the appropriate standard should be.

Initially, Wendy claims the court should reject Michael's argument because he failed to raise it before the trial court, thereby failing to preserve the issue for appellate review. Michael did not raise this issue before the trial court. In fact, in his trial brief, Michael cites to the *McDaniels* case and applies the factors set forth therein to the facts of the present matter. Thus, pursuant to RAP 2.5(a), this court could decline to review this claim of error.

However, RAP 2.5(a) is permissive in nature and does not automatically preclude this court from reviewing an issue not raised below.[4] Rather, this court has the discretion to review such an issue.[5] Because the issue involves the interests of a minor child, the child's paternity, and support, matters of paramount importance to the child, we will address the issues notwithstanding Michael's failure to raise them below.

Michael attempts to distinguish between those petitions filed under RCW 26.26.060(1)(a) and those filed under RCW 26.26.060(1)(b). Under RCW 26.26.060(1)(a), certain enumerated persons, including a man alleged to be the father, may bring an action *at any time* for the purpose

---

[3]The factors enumerated are: "the stability of the present home environment, the existence or lack thereof of an ongoing family unit, the extent to which uncertainty of parentage already exists in the child's mind, and any other factors which may be relevant in assessing the potential benefit or detriment to the child." *McDaniels*, 108 Wn.2d at 312-13.

[4]*Jones v. Stebbins*, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993).

[5]*Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 468, 843 P.2d 1056 (1993).

of disestablishing paternity.[6] Under RCW 26.26.060(1)(b) a man presumed to be a child's father may bring an action to disestablish paternity *only if the action is brought within a reasonable time after obtaining knowledge of relevant facts.*[7] Under RCW 26.26.040(1)(a), a man is presumed to be the natural father of a child "for all intents and purposes" if he and the child's natural mother are, or have been, married to each other and the child is born during the marriage or within 300 days of the termination of the marriage. Pursuant to this provision, Michael is presumed to be the father of J.M. There is no support for distinguishing between petitions filed under subsections (1)(a) and (1)(b) in order to apply different standards to evaluate such petitions. Rather, case law indicates that the "best interests of the child standard" governs the determination of all petitions to disestablish paternity, regardless of which section of the Uniform Parentage Act applies. Moreover, it appears that RCW 26.26.060(1)(b) is nothing more than a restriction on the time within which a petition must be filed by a presumed father such as Michael.

Michael argues that the trial court erred by relying on *McDaniels* and its specific direction to apply the best interests of the child standard, because *McDaniels* is limited to petitions filed by persons *outside* the child's present family, not by a presumed father. While *McDaniels* dif-

---

[6]The section provides in full:

A child, a child's natural mother, a man alleged or alleging himself to be the father, a child's guardian, a child's personal representative, the state of Washington, or any interested party may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship.

RCW 26.26.060(1)(a).

[7]This section provides in full:

A man presumed to be a child's father under RCW 26.26.040 may bring an action for the purpose of declaring the nonexistence of the father and child relationship only if the action is brought within a reasonable time after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

RCW 26.26.060(1)(b).

fers from the instant case in that it involved a petition filed by a man who was not the child's presumed father, and who also was not within the child's present family; at no point did the *McDaniels* court state that the only time the best interests of the child standard comes into play is when a paternity action is initiated by someone *outside* the present family. Rather, the court stated without limitation or qualification, "in actions relating to the care and welfare of minor children the best interests of the child control."[8] The court recognized that in actions under the Uniform Parentage Act, three entities possess rights that are implicated: the child, the putative parent, and the State. "Where these rights come into conflict, the rights of the child should prevail."[9] Thus, when balancing these interests in connection with a determination as to paternity, the court must keep in mind that the child's interests are paramount.[10] After establishing the principles governing all paternity proceedings, the court recognized that "[t]he criteria for determining the best interests of the child are varied and highly dependent on the facts and circumstances of the case at hand[,]" and enumerated some of the factors that are relevant to determining whether it is in the child's best interests to allow a paternity proceeding by one outside the present family.[11] In cases subsequent to *McDaniels*, our courts have reaffirmed the principle that the best interests of the child are paramount in any paternity proceeding.[12]

---

[8]*McDaniels*, 108 Wn.2d at 309-10.

[9]*Id.* at 311.

[10]*Id.* at 312.

[11]*Id.* (citing *In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980)).

[12]*In re Marriage of Swanson*, 88 Wn. App. 128, 944 P.2d 6 (1997) (Contrary to Michael's argument, the best interests of the child are of paramount importance even in paternity proceedings involving a petition filed by the presumed father.), *review denied*, 134 Wn.2d 1004 (1998); *State ex rel. Campbell v. Cook*, 86 Wn. App. 761, 769-70, 938 P.2d 345, *review denied*, 133 Wn.2d 1019 (1997); *Gonzales v. Cowen*, 76 Wn. App. 277, 282, 884 P.2d 19 (1994); and *In re Marriage of Thier*, 67 Wn. App. 940, 945, 841 P.2d 794 (1992) (In deciding whether paternity actions should proceed, the child's best interests are paramount, directly refutes Michael's claim that something other than the best interests of the child standard is applicable to his petition.).

Michael cites us to the case of *In re Paternity of K.*[13] which he believes supports his claim that the "best interests of the child" standard does not apply to petitions to disestablish paternity filed by the presumed father. *In re K.* does not support his argument. The only issue addressed in *In re K.* is the timeliness of a presumed father's petition to disestablish paternity. Although the court acknowledged that both the presumed father and the child have a compelling interest in an accurate determination of parentage,[14] that statement was made in connection with the additional statement that a presumed father cannot be held to have failed to timely bring a petition to disestablish paternity where he has no reason to believe he is not the biological father. In no way did the court undermine the principle that the child's interests must remain paramount in paternity proceedings.

The main concern in reviewing the trial court's determination to dismiss Michael's petition must be whether the trial court correctly determined that doing so would be in J.M.'s best interests. If the trial court's findings are supported by substantial evidence, then its use of the *McDaniels* factors cannot be grounds for reversal merely because *McDaniels* is factually distinguishable.

In the trial court's initial findings of fact, issued before Michael had the opportunity to attempt to join the alleged father, the court found that Michael is J.M.'s psychological father, that the present environment was the only one J.M. had ever known, and that it would not be in J.M.'s best interests to disestablish Michael as his father. Following the subsequent proceeding, held after the alleged father had been given notice, the court found as follows:

> The court finds from the information available and from the testimony at the time of trial, that it is not in the child's best interest to have [the alleged father] in the child's life. The

---

[13]*In re Paternity of K.*, 51 Wn. App. 131, 752 P.2d 393 (1988).

[14]*Id.* at 135.

court has applied the factors stated in *McDaniels v. Carlson,* 108 Wn.2d 299, 738 P.2d 254 (1987) as follows[:] (1) Continuity of established relationships will be maintained here[;] (2) Stability of the present home environment will be maintained[;] (3) There is no uncertainty of parentage existing in the child's mind at present[;] (4) The guardian ad litem recommends that it is in the best interest of the minor child that [Michael] be maintained as the child's parent for all legal purposes.

No one disputes the fact that Michael is the only father J.M. has ever known. J.M. has no knowledge of the results of the blood test which excluded Michael as his biological father. It is also undisputed that the guardian ad litem recommended a denial of the petition to disestablish paternity. Michael argues that the first two findings in the court's later order (stability and continuity) are not supported by substantial evidence. We disagree.

Michael argues that because Wendy and he have not lived together for extended periods of time since J.M.'s birth whatever stability is present in J.M.'s home environment will not be adversely affected by a declaration that he is not the father. However, as stated, Michael is the only father the child has ever known. Michael is listed as the father on J.M.'s birth certificate and, during all of the periods in which Michael was living with Wendy and the children, he consistently treated J.M. as his son, no differently from the way he treated his biological children. J.M. refers to Michael as "Daddy." There is no evidence that Wendy ever publicly or privately identified anyone other than Michael as J.M.'s father. As the courts consistently recognize, a paternity action, "by its very nature, threatens the stability of the child's world."[15] Whatever stability is present in the minor child's life regarding the identity of his father would be destroyed by the disestablishment of Michael's paternity.

---

[15]*McDaniels,* 108 Wn.2d at 310; *Cook,* 86 Wn. App. at 770.

Michael also challenges the court's finding that a denial of his petition is necessary to foster continuity of the relationship. He argues that the parenting plan continues contact between them, and in addition the parties are restrained from discussing the blood test results with the child. Michael argues these are sufficient to ensure the continuity of his relationship with J.M. But, the disestablishment of Michael's paternity would discontinue the legal parent-child relationship between them. Also, the relationship would be changed in the long term insofar as disestablishment would extinguish J.M.'s right to, and interest in, any inheritance from Michael. The interest in an inheritance, along with the interest in forming family bonds, are interests of the child which, in addition to his or her interest in receiving support, must be taken into account.[16] And, although Michael has an interest in not being erroneously required to pay child support, where his interest conflicts with the interests of the child, the child's interests prevail.[17] Where a paternity determination is clearly not in J.M.'s best interests, Michael may not sacrifice J.M.'s best interests to protect his own.[18]

In light of the above case law and the statutes, the trial court's findings of fact should not be disturbed. As in *In re Marriage of Thier*, although the blood tests showed that the presumed father was not the child's biological father, the trial court did not err in determining that it was not in the child's best interests to disestablish Michael's paternity.[19]

Michael asserts that because the court determined that J.M. was not a child of the marriage, it lacked authority to impose on him an obligation to support the child. He claims

---

[16]*McDaniels*, 108 Wn.2d at 311.

[17]*Id.*

[18]*Thier*, 67 Wn. App. at 946.

[19]*Id.*

that as J.M.'s "stepfather" his obligation to support J.M. terminated upon entry of the decree of dissolution.[20]

As discussed above, the Uniform Parentage Act establishes Michael as J.M.'s presumed father because he and Wendy were married at the time of J.M.'s birth.[21] Under RCW 26.26.040(2), this presumption may only be rebutted by clear, cogent, and convincing evidence.[22] "A blood test which conclusively demonstrates nonpaternity is clear, cogent, and convincing evidence."[23] However, the statute clearly states that the presumption of paternity is rebutted only "by a court decree establishing paternity of the child by another man." In the absence of an order declaring nonparentage, the presumed father is still the father of the child.[24]

In the instant case, as in *Thier*, the trial court declined to enter an order disestablishing the paternity of the presumed father even though blood tests showed that this presumed father was not the biological father. Thus, Michael remains J.M.'s presumed father under the Uniform Parentage Act. Notably, not only is Michael J.M.'s presumed father, but he is also J.M.'s presumed *natural* father "for all intents and purposes."[25] Thus, contrary to Michael's assertion, a "parent and child relationship" does exist be-

---

[20]Michael offers no legal citation supporting his self-proclaimed "stepfather" role in J.M.'s life.

[21]RCW 26.26.040(1)(a).

[22]RCW 26.26.040(2) provides:

> A presumption under this section may be rebutted in an appropriate action only by clear, cogent, and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man.

[23]*In re Marriage of T.*, 68 Wn. App. 329, 332 n.1, 842 P.2d 1010 (1993).

[24]*Thier*, 67 Wn. App. at 947.

[25]RCW 26.26.040.

tween them under the Uniform Parentage Act.[26] Consequently, in the absence of a court decree establishing paternity in another man, Michael remains J.M.'s natural father, with the obligation to support him even after the dissolution of his marriage to Wendy. The trial court did not err.

## Attorney Fees on Appeal

Wendy seeks attorney fees under RCW 26.09.140 and stated that she will file an affidavit of financial need within the time required in the statute. Her request for fees is made under the wrong statute. In both *Fernando v. Nieswandt* and *In re Marriage of T.*, the court has stated that the Uniform Parentage Act governs a request for attorney fees incurred in connection with a paternity action.[27] The provision of the Uniform Parentage Act governing costs and fees provides in pertinent part: "The court may order that all or a portion of a party's reasonable attorney's fees be paid by another party, except that an award of attorney's fees assessed against the state or any of its agencies or representatives shall be under RCW 4.84.185."[28] Pursuant to RAP 18.1(a), if a party prevails on appeal and was entitled to attorney fees at trial, the party may seek fees on appeal.[29] The attorney fee provision governing paternity proceedings, RCW 26.26.140, unlike RCW 26.09.140, does not require consideration of need or ability to pay in making an award.[30] Thus, there is no requirement to file an affidavit of financial need. However, considering

---

[26]The statute provides that, as used in the Uniform Parentage Act, " 'parent and child relationship' means the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship." RCW 26.26.010.

[27]*Fernando v. Nieswandt*, 87 Wn. App. 103, 110, 940 P.2d 1380, *review denied*, 133 Wn.2d 1014 (1997); *In re Marriage of T.*, 68 Wn. App. at 334-35.

[28]RCW 26.26.140.

[29]*Lindgren v. Lindgren*, 58 Wn. App. 588, 599, 794 P.2d 526 (1990).

[30]*In re Marriage of T.*, 68 Wn. App. at 334.

the facts of this case, in our discretion, we do not award attorney fees on appeal, except those requested by the guardian ad litem.[31]

The decision to deny the disestablishment of paternity and the award of child support are affirmed.

KENNEDY, C.J., and ELLINGTON, J., concur.