FILED
COURT OF APPEALS
DIVISION II
2015 JUL -7 AM 8: 46
STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Parenting and Support of:

C.H.<sup>†</sup>

               Child,

AUTUMN L. CURTIS,

               Respondent,

    v.

MARCUS S. HANSEN,

               Appellant.

No. 46217-6-II

UNPUBLISHED OPINION

MELNICK, J. — Marcus Hansen appeals the trial court's award of $5,000 in attorney fees to Autumn Curtis based on Hansen's intransigence in this domestic relations case. Because the trial court did not articulate any facts to support a finding of intransigence and failed to segregate fees caused by any intransigence, we vacate the trial court's attorney fees award.

## FACTS

Hansen and Curtis have one child, C.H., who lives primarily with Curtis. At the time of trial, Hansen served in the military and had been stationed in Italy since September 2012. He had contact with his child through Skype visits facilitated by both Curtis and his mother, Jessica Hansen.[1] Jessica's contact with her grandchild became a major subject of litigation.

---

† To provide confidentiality, we order the use of the minor's initials in the case caption and in the body of the opinion. 2006-1 General Order of Division II.

[1] To avoid confusion, we refer to Jessica by first name. We intend no disrespect.

In 2012, Jessica had unsupervised visitation time with C.H. In September 2012, in anticipation of Hansen's move to Italy, Curtis filed a motion for temporary orders regarding visitation schedules and child support. Curtis filed a declaration outlining her concerns regarding C.H.'s safety and well-being during Jessica's unsupervised time with C.H. Curtis explained Jessica's history of mental illness, including suicide threats, suicide attempts, and hospitalizations. In response, Hansen filed the declaration of one of Jessica's psychologists, who summarized Jessica's mental health history and diagnoses, including ongoing disorders. Jessica's psychologist advised that he observed a very positive relationship between Jessica and C.H.

In late October 2012, following a hearing, the trial court ordered that "[C.H.] shall have at least weekly contact with [Jessica] for at least several hours per visit." Clerk's Papers (CP) at 87. However, the trial court also ordered that while he is in Italy, Hansen "may not designate or delegate his residential time or visitation rights to [Jessica] or any other person in his absence." CP at 86. Additionally, the trial court ordered that C.H. "shall have reasonable Skype privileges with [Hansen] while [Hansen] is in Italy in the event that the child is visiting with [Jessica]."[2] CP at 86.

In November 2012, Hansen filed a motion to establish a weekly visitation schedule for C.H. and Jessica. In response, Curtis filed another declaration wherein she expressed her concerns for C.H.'s safety and well-being while in Jessica's care. She also provided the trial court with 911 transcripts related to Jessica's suicide threats. In January 2013, the trial court entered an agreed order establishing a visitation schedule which permitted Jessica to have weekly contact with C.H.

---

[2] The order does not explicitly state that the purpose of Jessica's visitation is to facilitate C.H.'s Skype visitation with Hansen. It also does not order that Hansen is entitled to a specific amount of visitation with C.H.

In November 2013, Curtis moved for an order terminating grandparent visitation. In another declaration, Curtis again expressed significant concerns over C.H.'s safety and well-being while in Jessica's care. Curtis declared that she "only learned of how suicidal and potentially dangerous Jessica [is] after requesting the 911 transcripts." CP at 271. In a declaration filed on December 6, 2013, Hansen declared that Jessica's "mental condition should no longer [be] in question" because "[s]he has not had any incidents in over a year and a half." CP at 237.

In December 2013, the trial court clarified its October 2012 order. It stated that Jessica's contact with C.H. was to facilitate Skype visits between C.H. and Hansen and that it did not establish separate grandparent visitation. The trial court accordingly denied Curtis's motion for an order terminating grandparent visitation and ordered that Hansen "shall continue to have weekly Skype privileges with [C.H.] at [Jessica's] home every Saturday for three hours." CP at 291. In January 2014, the trial court denied Curtis's motion to reconsider the order.

In April, following an unsuccessful settlement conference, the trial court set a trial for the week of November 12, 2013 to establish a residential schedule, parenting plan, and child support. Because of scheduling issues, the trial court continued the trial to February 25, 2014.

On February 13, 2014, Hansen's attorney filed a notice of intent to withdraw, effective immediately. On February 20, 2014, Hansen, who appeared telephonically from Italy, moved for a continuance of the trial. He argued that although his attorney had been prepared for trial, as a self-represented litigant (SRL) he needed more time to prepare. Hansen further advised the trial

court that his attorney withdrew because Hansen could no longer afford him. Hansen also argued that he would be prejudiced by appearing telephonically for trial and he requested more time to save money and to request leave so he could personally appear in court. Amy Perlman, the guardian ad litem, opined that it would be in C.H.'s best interest to resolve the matter as soon as possible, rather than continuing the trial.

The trial court noted that the trial had already been pending for many months and expressed "very strong concerns with what looks . . . to be an intentional attempt to delay trial" and "bad motives." Report of Proceedings (RP) (Feb. 20, 2014) at 17, 18. The trial court found that Hansen's motion to continue was not brought in good faith and denied it. For this motion hearing, the trial court ordered Hansen to pay Curtis's attorney fees in the amount of $560, which Hansen does not appeal.

The parties proceeded to trial beginning on February 25, 2014. The trial lasted through February 27. Hansen participated telephonically. Prior to trial, Hansen failed to disclose any of his proposed witness. He also failed to properly subpoena the witnesses through the trial court. The trial court expressed significant concerns about what appeared to "be an attempt at the very last minute to basically ambush Ms. Curtis" with witnesses who had not previously been disclosed and who she had not had an opportunity to depose. I RP at 24. Therefore, with the exception of one rebuttal witness, the trial court did not allow Hansen's undisclosed witnesses to testify.

The primary issues at trial were Jessica's facilitation of Skype visitation and contact with C.H., the length and duration of Hansen's visitation with C.H. in Washington or Italy, and payment of medical, education, and care expenses.

At trial, considerable testimony revolved around Jessica's mental health issues. Perlman testified that when she initially prepared her guardian ad litem report, she was unaware of the full extent of Jessica's mental health history and Jessica's contacts with law enforcement as a result of mental illness. The testimony established that Hansen and Jessica did not fully disclose to Perlman some incidents related to Jessica's mental illness. Curtis testified that she did not become aware of the full extent of Jessica's mental health history and Jessica's contacts with law enforcement until she and her attorney investigated.

Jessica testified at trial. She admitted to purposefully deleting the logs of C.H.'s Skype visitation with Hansen and that visitation did not occur every Saturday as ordered. She also testified that she did not disclose her full mental health history to Perlman or Curtis.

Hansen's testimony established that he knew Jessica had been hospitalized due to mental illness, but he did not disclose at least two of Jessica's hospitalization to Curtis. He also testified that C.H. would still visit Jessica even if Hansen was unavailable for Skype visitation, but claimed "at the time . . . the court order was that [Jessica] was allowed visitation." III RP at 427.

Some of Hansen's cross-examination of witnesses revolved around Jessica's mental health history and her contact with C.H. During his closing argument, Hansen urged the trial court to continue to allow Jessica to facilitate his Skype visitation with C.H.

At the close of trial, Curtis requested attorney fees based on Hansen's bad faith and intransigence. Curtis asserted that she incurred at least $5,000 in attorney fees as a result of the trial. Curtis argued,

> And then in regards to the attorney fees . . . based off of the findings that this court made, given the fact that there were significant issues regarding Mr. Hansen's disclosure or lack thereof, regarding issues with [Jessica], given [Jessica's] lack of disclosure regarding her mental health issues, I think it needlessly increased the costs that were associated with this case. . . . I think had this information been known to the court prior, I don't think this would have been an issue at trial. But

because of their lack of forthrightness, this is an issue that had to be litigated heavily and was the primary issue for litigation.

. . . .

[H]e chose to fire his counsel. . . . He was aware of what this entailed. And because of this, [Curtis] has incurred a significant amount of funds or fees that she never should have incurred.

RP (Mar. 20, 20104) at 29-30.[3]

In its oral ruling, the trial court expressed its belief that Hansen "actively worked to withhold" Jessica's mental health issues from Curtis, litigated inappropriate issues such as grandparent visitation, actively concealed what Hansen's Skype visits with C.H. entailed, inappropriately requested a continuance, and subpoenaed professionals late for trial. RP (Mar. 20, 2014) at 9. The trial court also noted that the case "should . . . and could have settled" given that the trial court's ruling is very similar to Curtis's ongoing offer. RP (Mar. 20, 2014) at 34. The trial court conveyed its belief that, based on "the very limited issues [Hansen] . . . had, which were summer visits and Skype visits and child support," the trial should have taken only half a day. RP (Mar. 20, 2014) at 34. The trial court found that "because of [Hansen's] actions, it is appropriate . . . to order that [Hansen] contribute—not pay all, but contribute to the costs of Ms. Curtis'[s] attorney's fees [sic]." RP (Mar. 20, 2014) at 34.

---

[3] At a hearing held prior to the trial court's entry of final orders, the trial court referenced a fee affidavit submitted by Curtis's attorney, but the fee affidavit is not contained in the record on appeal. *See* RP (Apr. 2, 2014) at 21 ("And I have reviewed the affidavit in support of your fees. The fees are well above what I had indicated earlier I would be willing to order if there were support in the record. You submitted that support, and I'm going to sign off on the request for fees as I earlier ordered.").

The trial court entered findings of fact and conclusions of law, a final order of child support, and parenting plan. It discontinued Jessica's supervision of C.H.'s Skype visits with Hansen and ordered that Curtis supervise the visits. The trial court ordered Hansen to pay Curtis's attorney fees in the total amount of $5,560. Hansen appeals only $5,000 of the attorney fee award.

ANALYSIS

I. STANDARD OF REVIEW

A trial court has discretion to award attorney fees based on a party's intransigence. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). We review a trial court's award of attorney fees based on a party's intransigence for an abuse of discretion. *Bobbitt*, 135 Wn. App. at 29-30. Trial courts must exercise their discretion on articulable grounds, making an adequate record so the appellate court can review a fee award. *In re Marriage of Swaka*, 179 Wn. App. 549, 558, 319 P.3d 69 (2014). The party challenging the decision must demonstrate that the trial court exercised its discretion in a manner that was "'clearly untenable or manifestly unreasonable.'" *In re Marriage of Crosetto*, 82 Wn. App. 545, 563, 918 P.2d 954 (1996) (quoting *In re Marriage of Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994)). We review challenged findings of fact for substantial evidence, which is evidence "sufficient to persuade a rational, fair-minded person of the truth of the finding." *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

The trial court entered no written findings to support its award of attorney fees to Curtis. But the trial court made findings regarding attorney fees in its oral ruling on March 20, 2014. Where the trial court enters no findings on a particular matter, "[we] may look to the oral opinion

to determine the basis for the trial court's resolution of the issue."[4] *In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

A court has discretion to award attorney fees when one parent's intransigence causes the other parent to incur additional legal services, regardless of financial abilities. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). In general, trial courts must segregate fees caused by intransigence from those fees incurred for other reasons. *Crosetto*, 82 Wn. App. at 565. But when a party's intransigence "permeate[s] the entire proceedings, the court need not segregate which fees were incurred as a result of intransigence and which were not." *In re Marriage of Burrill*, 113 Wn. App. 863, 873, 56 P.3d 993 (2002).

II.     THE TRIAL COURT ABUSED ITS DISCRETION

A.      Intransigence

A court may award one party attorney fees based on the other party's intransigence if the other party engages in foot-dragging and obstruction. The party requesting fees for intransigence must show the other party acted in a way that made trial more difficult and increased legal costs, like repeatedly filing unnecessary motions or forcing court hearings for matters that should have been handled without litigation.

*In re Marriage of Pennamen*, 135 Wn. App. 790, 807, 146 P.3d 466 (2006). Generally, intransigence occurs where a party engaged in foot-dragging and obstruction, filed unnecessary or frivolous motions, refused to cooperate with the opposing party, refused to comply with discovery requests, or engaged in any other conduct that made the proceeding unduly difficult or costly. *Greenlee*, 65 Wn. App. at 708; *Chapman v. Perera*, 41 Wn. App. 444, 456, 704 P.2d 1224 (1985);

---

[4] Curtis moved to remand for entry of written findings. Our commissioner denied the motion because "[t]he oral findings are sufficient for review." Commissioner's Ruling (Aug. 15, 2014) at 1.

*Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969)); *see also In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997*); Crosetto*, 82 Wn. App. at 564.

B.      Hansen Was Not Intransigent[5]

Although the record demonstrates that Hansen did not fully cooperate with Curtis throughout litigation, we cannot discern any specific facts in the record to support a finding that Hansen was intransigent. The evidence presented at trial established that Hansen and Jessica did not fully disclose to Perlman, Curtis, or the trial court incidents in which Jessica threatened or attempted suicide, or harmed herself. However, the record does not demonstrate that any party ever requested such information from Hansen, either informally or through discovery requests. Nor is there anything in the record to show Hansen refused to comply with discovery requests. While Hansen did not disclose at least two of Jessica's hospitalizations to Curtis, the record does not demonstrate that Curtis requested such information from Hansen or that he had an obligation to disclose this information.[6]

There is nothing in the record to show Hansen engaged in foot-dragging and obstruction, filed unnecessary or frivolous motions,[7] refused to cooperate with the opposing party, or refused to comply with discovery requests. The record is also silent to Hansen engaging in any other conduct that made the proceeding unduly difficult or costly. The record does not demonstrate that Hansen's failure to disclose and properly subpoena witnesses resulted in increased litigation or

---

[5] As a preliminary matter, Curtis argues that we should not consider Hansen's argument on appeal due to lack of support by citation to authority. We disagree. Hansen's brief contains reasoned argument that is supported by sufficient citation to authority to warrant review; therefore, we reach the merits of his arguments. RAP 10.3(a)(6).

[6] Curtis does not argue that Hansen had an independent obligation to provide this information.

[7] The trial court awarded fees to Curtis for Hansen's unsuccessful motion to continue; however, neither party appealed this ruling nor is it before us for consideration.

costs to Curtis. The issues surrounding Jessica's supervision of Hansen's Skype sessions with C.H. were heavily litigated both prior to and during trial, but the record does not demonstrate that Hansen's actions surrounding this issue resulted in increased litigation. Nor does it demonstrate that Hansen's focus on the Skype sessions during the trial resulted in increased litigation because Curtis also presented extensive evidence on the issue. Because no specific facts in the record support a finding of Hansen's intransigence, the trial court abused its discretion in so finding.

C.     Attorney Fees for Intransigence

Although we hold that the record does not support a finding of intransigence, even if it did, the trial court's oral ruling was vague as to how Hansen's conduct formed the basis for its attorney fees award. The trial court had already awarded Curtis attorney fees incurred as a result of its finding that Hansen brought his motion to continue the trial in bad faith. The trial court precluded Hansen from calling his undisclosed witnesses at trial. The trial court expressed its belief that the trial should have only taken about half a day, but both parties presented significant evidence.

Finally, the trial court's ruling that Curtis's final settlement offer was very similar to the final orders entered by the trial court cannot be a basis of fees where the record shows that both Hansen and Curtis previously refused to settle. Hansen simply asserted his right to go to trial, which is not a basis for intransigence. *See Greenlee*, 65 Wn. App. at 708. The trial court did not segregate fees caused by intransigence from those fees incurred for other reasons, and we cannot hold that any intransigence permeated the proceedings. Therefore, the trial court abused its discretion in finding that Hansen was intransigent and by not segregating fees caused by intransigence so we can more closely examine them.

III. ATTORNEY FEES ON APPEAL

Hansen does not request attorney fees on appeal. Curtis requests attorney fees. Curtis first requests attorney fees based on Hansen's intransigence in the trial court. "[A] party's intransigence in the trial court can also support an award of attorney fees on appeal."[8] *In re Marriage of Mattson*, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). Because the record does not demonstrate that Hansen was intransigent, Curtis is not entitled to attorney fees on appeal based on Hansen's intransigence in the trial court.

Curtis next requests attorney fees pursuant to RAP 18.1(a) and RCW 26.26.140, the Uniform Parentage Act (UPA). We may award attorney fees on appeal if "allowed by statute, rule, or contract and the request is made pursuant to RAP 18.1(a)." *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003). RCW 26.26.140 governs attorney fees requested in actions that arise under the UPA. *See In re Marriage of T.*, 68 Wn. App. 329, 334, 842 P.2d 1010 (1993). RCW 26.26.140 provides that "[t]he court may order that all or a portion of a party's reasonable attorney's fees [sic] be paid by another party" and does not require consideration of need or ability to pay in making an award.[9] *In re Marriage of M.*, 92 Wn. App. 430, 441, 962 P.2d 130 (1998). But because Curtis is not the prevailing party on appeal, we hold that she is not entitled to attorney fees on appeal.

---

[8] Hansen opposes Curtis's request for attorney fees. He invites us to overrule *Mattson*, arguing that "*Mattson* has grossly mis-read the two cases it cites" as support. Reply Br. of Appellant at 13. Because insufficient facts support the trial court's conclusion that Hansen was intransigent, *Mattson* is inapplicable and we need not reach the merits of Hansen's argument.

[9] Both parties submitted financial affidavits that we need not consider.

11

We vacate the trial court's award of attorney fees based on intransigence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.